**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDWARD CASEY,

        Plaintiff-Appellant,

    v.

CITY OF FEDERAL HEIGHTS,
LES ACKER, KEVIN SWEET, and
MALEE LOR,

        Defendants-Appellees.

No. 06-1426

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 05-CV-01013-REB-PAC)**

---

Michael J. Thomson, Purvis, Gray & Murphy, LLP, for Plaintiff-Appellant.

Thomas S. Rice (Gillian M. Fahlsing with him on the briefs), Senter Goldfarb & Rice LLC, for Defendants-Appellees.

---

Before **KELLY**, **ANDERSON**, and **MCCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Edward Casey went to the Federal Heights, Colorado, municipal courthouse to contest a traffic ticket. After losing his case, he walked to the parking lot to retrieve money from his truck to pay the fine, carrying with him the court file.

On his way back to the courthouse he was grabbed, tackled, Tasered, and beaten by city police officers. The question presented is whether his claims for excessive force under the Fourth Amendment and 42 U.S.C. § 1983 survive summary judgment. We hold that they do.

## I. FACTS[1]

Mr. Casey unsuccessfully challenged a traffic ticket at the Federal Heights courthouse on August 25, 2003. He told the judge that he wanted to appeal, and the judge gave him his court file and told him to take it to the cashier's window along with his money. Because Mr. Casey had left his money in his truck, he sent his daughter to the restroom and headed for the parking lot. A person later identified as the court clerk—although Mr. Casey says that at the time he did not know who she was—told him not to remove the file from the building. He replied that his daughter (who was eight years old) was in the bathroom and he would be right back. Mr. Casey left the building still holding his file, which may have been a misdemeanor under Colorado law.[2]

---

[1]Because Mr. Casey's claims were dismissed on defendants' summary judgment below, on appeal we resolve all factual disputes in his favor.

[2]A person violates Colo. Rev. Stat. § 18-8-114(1)(b) if, "[k]nowing the person lacks the authority to do so, the person knowingly destroys, mutilates, conceals, removes, or impairs the availability of any public record." It is not clear to us that Mr. Casey satisfied the statute's mens rea requirement, or that briefly carrying a file through the court's parking lot "removes" a record under

(continued...)

Officer Kevin Sweet learned from the clerk that Mr. Casey had taken the file into the parking lot and moved to intercept him as he returned. By this time Mr. Casey had been to his truck, obtained his money to pay the fine, and was returning to the courthouse. Officer Sweet accosted him and told him to return to his truck. Mr. Casey explained that he needed to get back to the courthouse to return the file and attend to his daughter. Officer Sweet then asked Mr. Casey for the file, and Mr. Casey held out his briefcase with the file "clearly visible . . . in an outside pocket." App. 100. Officer Sweet did not take the file, so Mr. Casey moved around him to take the file to the cashier. Without further explanation or discussion, Officer Sweet then grabbed Mr. Casey's arm and put it in a painful arm-lock. Confused, Mr. Casey moved his arm without breaking the officer's grip and started to walk to the courthouse with the file. Officer Sweet then jumped on Mr. Casey's back. Mr. Casey's shirt was ripped in the process. Mr. Casey did not understand why Officer Sweet was tackling him and asked, "What are you doing?" *Id*. Officer Sweet never told him that he was under arrest, and never advised him to stop resisting.

At that point, Officer Malee Lor arrived in her patrol car. Concluding that Mr. Casey "needed to be controlled," she fired her M26 Taser at him. This Taser

---

[2](...continued)
Colorado law. Mr. Casey was never charged under the statute, and after *Cortez v. McCauley*, 478 F.3d 1108, 1126–27 (10th Cir. 2007) (en banc), his excessive force claim is independent from the lawfulness of his arrest, so we need not puzzle through it further.

-3-

model shoots wire-attached hooks and can deliver a shock for up to five seconds. *Id.* at 117. Both of these hooks attached to Mr. Casey. There is conflicting testimony on how quickly Officer Lor fired. One independent eyewitness testified that "[s]he wasn't there longer than a couple seconds." *Id.* at 176. Another testified that Officer Lor was there for a minute at the most, and a third that it was "no more than twenty seconds" before she fired. *Id.* at 199. Officer Lor testified that she spent two or three minutes watching the conflict before firing.

Mr. Casey disengaged the Taser wires, later testifying that "all [he] could think of was making that electricity stop," all the while asking the officers what they were doing. *Id.* at 103. Shortly thereafter, several other officers arrived on the scene. According to the witnesses, the officers brought Mr. Casey to the ground, handcuffed him tightly, and repeatedly banged his face into the concrete. After Mr. Casey was on the ground, one of the officers, Clint Losli, also Tasered him by pressing the electrical barbs at the end of the Taser directly into him without launching them. Officer Lor discharged her Taser again and shocked another officer, Jim Wright; Officer Sweet then told her to "put the thing away." *Id.* at 216. Mr. Casey testified that during this time he "kept trying to get up," although the officers eventually overpowered him and forced him into a patrol car. *Id.* at 103.

The officers took Mr. Casey into custody and charged him with resisting arrest and obstructing a peace officer, two Colorado misdemeanors. Colo. Rev. Stat. §§ 18-8-103, -104. A year and a half later he was also charged with "obstructing government operations," to which he pleaded guilty and received a deferred sentence.[3] *Id.* § 18-8-102.

Mr. Casey then filed this suit for excessive force under the Fourth Amendment and 42 U.S.C. § 1983. He sued Officer Sweet and Officer Lor under § 1983 for causing him to be subjected to excessive force, and sued the City of Federal Heights and Police Chief Les Acker under § 1983 on theories of municipal and supervisory liability, respectively. He did not sue any of the other officers. The district court dismissed all of these claims on summary judgment. *Casey v. City of Fed. Heights*, No. 05-cv-01013, 2006 WL 2711760 (D. Colo. Sept. 21, 2006). It held that the force used by Officers Sweet and Lor was not excessive, and that because the underlying excessive-force claims against the individual officers failed, Chief Acker and the City were not liable either. *Id.* at *4. This appeal followed.

---

[3]The statute punishes anybody who "intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant, by using or threatening to use violence, force, or physical interference or obstacle." Colo. Rev. Stat. § 18-8-102(3). It is unclear whether Mr. Casey's charge is based on his conduct during his arrest or his taking the court file into the parking lot.

## II. ANALYSIS

The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest. To determine whether the force used in a particular case is excessive "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 397 (internal quotations marks omitted). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Before discussing the liability of Officers Sweet and Lor individually, we consider how these factors frame the inquiry. In this case, all three factors suggest that the officers used excessive force.

Mr. Casey's conduct was not a severe crime—if it amounted to a crime at all. First, removing a record is a Class One misdemeanor under Colorado law, carrying a sentence of six to eighteen months and a fine of $500–$5000. Colo. Rev. Stat. §§ 18-1.3-501(1)(a), -8-114(1)(b). Obstructing government operations, the crime to which Mr. Casey pleaded guilty in state court, is even more minor—a

Class Three misdemeanor punishable by as little as a fifty dollar fine and six months' imprisonment at most. *Id*. §§ 18-1.3-501(1)(a), -8-102(3). Neither offense was violent, and defendants conceded at oral argument that these offenses were not severe. Further, Mr. Casey's behavior falls toward the least culpable side of the covered conduct. He removed the file from the hallway of a building to its parking lot, and his conduct would not have impaired the operation of the government in any way if he had been allowed to bring the file back, as he was attempting to do. Officer Sweet was faced with somebody who had committed a misdemeanor in a particularly harmless manner, which reduces the level of force that was reasonable for him to use.

Nor did Officer Sweet have any reason to believe that Mr. Casey posed "an immediate threat to the safety" of anybody present. *Graham*, 490 U.S. at 396. Mr. Casey maintained in his testimony that Officer Sweet simply grabbed and tackled him without provocation. Three independent eyewitnesses to the confrontation all confirmed that Officer Sweet was the aggressor, and that Mr. Casey was not violent during the encounter. At oral argument, the only evidence the defendants cited to suggest that Mr. Casey seemed dangerous was the fact that he had been argumentative during his hearing at the Federal Heights Courthouse earlier. Witnesses, however, described his demeanor in court as "slightly upset" but not disrespectful, and not out of the ordinary, App. 172—and we assume their

-7-

story to be accurate for purposes of summary judgment. On the facts before us, Mr. Casey could not reasonably have been seen as dangerous.

Finally, when Officer Sweet initiated the use of force, Mr. Casey was neither "*actively* resisting arrest" nor "attempting to evade arrest *by flight*." *Graham*, 490 U.S. at 396 (emphasis added). Although Officer Sweet was in uniform, he never told Mr. Casey that he was under arrest. Even after Officer Sweet grabbed him, Mr. Casey was not attempting to flee from the scene but rather to return to the Federal Heights courthouse. The Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture. If anything, by returning to the courthouse rather than to his truck Mr. Casey would have made himself easier to capture, not harder.

In sum, we are faced with the use of force—an arm-lock, a tackling, a Tasering, and a beating—against one suspected of innocuously committing a misdemeanor, who was neither violent nor attempting to flee. In that context, we examine the excessiveness of the force used against Mr. Casey, considering first whether each officer's conduct violated the Constitution; then, if so, whether it also violated clearly established law.

**A. Officer Sweet's Liability**

   **1. Constitutional Violation**

Officer Sweet grabbed and then tackled Mr. Casey without ever telling him that he was under arrest. Nor did he give Mr. Casey a chance to submit peacefully to an arrest. While the reasonableness of his force must be judged from the officer's perspective, Mr. Casey also testified that he repeatedly asked, "What are you doing?" as he was grabbed and tackled. App. 100. Given this, a reasonable officer should, at a minimum, have ordered Mr. Casey to submit to an arrest or used minimal force to grab him while informing him that he was under arrest. Taking the facts in the light most favorable to Mr. Casey, Officer Sweet's treatment was not reasonable for a nonviolent misdemeanant who was neither dangerous nor fleeing.

This conclusion is reinforced by comparison with our recent decision in *Mecham v. Frazier*, ___ F.3d. ___, No. 05-4297, 2007 WL 2608624 (10th Cir. Sept. 11, 2007). There, we held that officers had not violated the Fourth Amendment in using pepper spray to arrest a woman who was uncooperative during a traffic stop. Although we acknowledged that the "unfortunate" conduct of the officers was possibly wrong in hindsight, we held that it was justified by two of the three factors under *Graham*—safety concerns and Ms. Mecham's resistance to arrest. *Id.* at *3–*4. In particular, Ms. Mecham repeatedly ignored the officers' warnings that she would be arrested, thus turning "what should have

been a routine encounter . . . into a fifty-minute ordeal." *Id.* at *3. Even when given one last warning to get out of her car or face arrest, she refused. She also remained in control of her car on a "narrow shoulder of a busy interstate highway," and thus may have been "a danger to herself or others." *Id.* at *4.

In contrast, the confrontation with Mr. Casey did not give Officer Sweet reason to fear for his safety. Nor did Officer Sweet give Mr. Casey any indication that he was, or would soon be, under arrest. Furthermore, Mr. Casey's arrest was transformed from "a routine encounter" only by Officer Sweet's use of force. In light of *Graham* and *Mecham*, a reasonable jury could find Officer Sweet's use of force to be excessive and therefore unconstitutional.

Mr. Casey sued Officer Sweet not only for directly using excessive force against him, but also "for his failure to intervene and prevent the use of excessive force by his fellow officers." Aplt's Op'g Br. 25. Mr. Casey raised this claim below, although the district court did not discuss it in dismissing his § 1983 claim. *Casey*, 2006 WL 2711760. Genuine issues of material fact remain on this argument for § 1983 liability as well.

As we have held, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). In *Mick*, a police officer was accused of pulling the defendant out of her car, throwing her to the pavement, stepping on her, and dragging her across the ground, in violation of

-10-

the Fourth Amendment. We held that a Secret Service agent who was present could be constitutionally liable for his failure to intervene if he "watched the incident and did nothing to prevent it." *Id.* at 1137. We cited several cases from our Circuit and others holding that there is an affirmative constitutional duty to stop other officers from using unconstitutionally excessive force. *Id.* at 1136 (citing *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984), *vacated on other grounds sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441–42 (11th Cir. 1985)).[4]

Here, Mr. Casey alleges that Officer Sweet did nothing to prevent Officer Lor from Tasering him and other officers from beating him. Moreover, because Officer Sweet initiated the confrontation as the first officer on the scene, his duty to keep the arrest from getting out of hand is particularly clear. Also, Officer Sweet had trained Officer Lor in Taser use, and told her to put her Taser away after she used it a second time, which indicates that he had some authority over her.[5] Officer Sweet should have known that the force used by the other officers was excessive given that Mr. Casey had not tried to fight or to flee, and given the

---

[4]*Lusby*, *O'Neill*, and *Fundiller* evaluated the use of excessive force as a substantive due process claim; *Mick* was decided under the Fourth Amendment.

[5]Because of all these factors, we need not decide whether there are limits to *Mick*'s apparent rule that liability extends to *any* officer who watches and does nothing to prevent an incident of excessive force.

-11-

triviality of his offense.  Knowing that, he had some responsibility to keep his initial use of force from turning into a mêlée.

### 2.  Clearly Established Law

Because Officer Sweet asserts qualified immunity, we must decide not only whether Mr. Casey has asserted a violation of his constitutional rights, but also whether Officer Sweet's actions violated "clearly established law."  *Saucier v. Katz*, 533 U.S. 194, 207 (2001).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  For reasons we will discuss, a reasonable officer must have known that he could not behave as Mr. Casey alleges that Officer Sweet did.

The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be "clearly established."  Since 1989, Supreme Court precedent has unambiguously held that excessive force claims are regulated by the Fourth Amendment, and that uses of force that are not objectively reasonable are unconstitutional.  *Graham*, 490 U.S. at 395.  In 1992, we held that *Graham* itself was enough to constitute clearly established law in an excessive force case.  *Mick*, 76 F.3d at 1135.  More recently, however, the Supreme Court has held that *Graham*'s "general proposition . . .  is not enough" to turn *all* uses of excessive force into violations of clearly established law.  *Saucier*, 533 U.S. at

201–02. In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean that it is always clear *which* uses of force are unreasonable.

"Ordinarily," we say that for a rule to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, because excessive force jurisprudence requires an all-things-considered inquiry with "careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern. *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) ("[A] general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." (internal quotation marks and alteration omitted)). Indeed, the Supreme Court has warned that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The *Hope* decision "'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described

conduct was unconstitutional.'" *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

We have therefore adopted a sliding scale to determine when law is clearly established. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce*, 359 F.3d at 1298. Thus, when an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law.

*Holland ex. rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001), illustrates the point. There, sheriffs who deployed a SWAT team that "h[e]ld . . . children directly at gunpoint after the officers had gained complete control of the situation," were held liable under *Garner* and not entitled to qualified immunity. Even though we had not ruled on a similar factual situation before, we held that the officers were not entitled to immunity from an excessive force claim because there were "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for his conduct. *Id.* at 1197.

We have located no case in which a citizen peacefully attempting to return to the courthouse with a file he should not have removed has had his shirt torn, and then been tackled, Tasered, knocked to the ground by a bevy of police officers, beaten, and Tasered again, all without warning or explanation. But we

-14-

need not have decided a case involving similar facts to say that no reasonable officer could believe that he was entitled to behave as Officer Sweet allegedly did. *Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest. 490 U.S. at 396. *Mick* establishes that Officer Sweet is responsible not only for the force he used against Mr. Casey but for failing to take some steps to mitigate the fracas that ensued. 76 F.3d at 1136. In light of those two rules, a reasonable officer could not have found a "legitimate justification" for Officer Sweet's conduct on the facts now before us. *Holland*, 268 F.3d at 1197. Therefore, he is not entitled to immunity from trial.

## B. Officer Lor's Liability

### 1. Constitutional Violation

A Taser like the M26 generates a charge of 50,000 volts, although the total amount of electricity delivered, and hence the severity of the pain inflicted, depends greatly on how long the Taser is applied. Taser International, *Basic Electric Principles*, *available at* http://www.taser.com/research/Science/Pages/BasicElectricPrinciples.aspx. Mr. Casey testified that after he was hit, "all [he] could think of was making that electricity stop." App. 103.

And what was the provocation? The scene must be viewed objectively, from the perspective of a reasonable officer in Officer Lor's shoes, taking the

facts in the light most favorable to the party opposing summary judgment. *Graham*, 490 U.S. at 396. Mr. Casey had attempted to return to the courthouse, unaware that the reason he was being grabbed was that he was under arrest. There was a struggle. But as Mr. Casey and the eyewitnesses tell it, Mr. Casey was not fighting back even though Officer Sweet had tackled him and ripped his shirt. Officer Lor fired almost immediately upon arrival, and one witness testified that she could not have known what was going on. Applying *Graham*'s test of objective reasonableness, her conduct cannot be justified by "the severity of the crime at issue," by any "threat to the safety of the officers or others," or by "active[] resist[ance to] arrest or [an] attempt[] to evade arrest by flight." *Id.* at 396. The crime was not severe, Mr. Casey was not threatening, and he was not fleeing the scene.

According to Mr. Casey, when Officer Lor arrived on the scene she hit him with her Taser "immediately and without warning." Aplt's Op'g Br. 21. The absence of any warning—or of facts making clear that no warning was necessary—makes the circumstances of this case especially troubling. *Cf. Mecham*, 2007 WL 2608624 (concluding that the use of pepper spray after repeated warnings was not excessive force). Officer Lor gave Mr. Casey no opportunity to comply with her wishes before firing her Taser. While we do not rule out the possibility that there might be circumstances in which the use of a Taser against a nonviolent offender is appropriate, we think a reasonable jury

-16-

could decide that Officer Lor was not entitled under these circumstances to shoot first and ask questions later.

Cases in our Circuit and others that have considered the reasonable use of Tasers confirm this conclusion. In *Hinton v. City of Elwood*, 997 F.2d 774, 777 (10th Cir. 1993), we held that it was not excessive for officers to use an "electrical stun gun" on a man after grabbing him and wrestling him to the ground. But we noted that what justified this conduct was his active resistance to arrest—Mr. Hinton was kicking and biting the officers and had shoved one of them to start the fight. *Id.* at 776–77, 781. Moreover, the officers had warned Mr. Hinton, before he shoved one of them, that they would arrest him for disorderly conduct "if he engaged in one more outburst." *Id.* at 776. Neither of these factors—the warning or the violence of the victim—is present here to justify the use of the Taser.

Similarly, in *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), the Eleventh Circuit held it reasonable to fire a Taser at a truck driver who refused to provide his insurance information or a bill of lading and was yelling loudly at a police officer who pulled him over. The officer had not advised Mr. Draper that he was under arrest. *Id.* at 1276–77. However, the court found an electric shock from the Taser "reasonably proportionate" to the situation because Mr. Draper was belligerent and hostile, and because he had refused five commands to retrieve his documents from the cab of his truck. *Id.* at 1278. We are not sure that we

-17-

would have come to the same conclusion on those facts, but even so, Officer Lor's use of the Taser was more egregious. Her conduct could not be justified by Mr. Casey's resistance to her commands because she did not give him any commands to obey.

We have located no published decision in which an officer's use of a Taser has been upheld in circumstances this troubling. Officer Lor testified that the policy of the Federal Heights police department is that a Taser can appropriately be used to "control" a target. App. 117. However, it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance. Because a reasonable jury could find that Officer Lor lacked any such reason, she is not entitled to summary judgment on the constitutional violation.

### 2. Clearly Established Law

Like Officer Sweet, Officer Lor asserts qualified immunity, so we must also decide whether her use of excessive force violated "clearly established law." *Saucier*, 533 U.S. at 207. We hold that it did.

As we discussed above, an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for acting as she did. *Holland*, 268 F.3d at 1197. Each factor in

*Graham* counseled against the use of a large amount of force. Officer Lor concedes that even at the time she did not think that Mr. Casey "presented an immediate threat of death or serious injury to himself or others." App. 117. On the summary judgment record—which of course may be disputed at trial—Officer Lor's use of the Taser was without any legitimate justification in light of *Graham*. We do not know of any circuit that has upheld the use of a Taser immediately and without warning against a misdemeanant like Mr. Casey. Therefore, Officer Lor is not entitled to qualified immunity from this excessive force suit.

## C. Municipal and Supervisory Liability

Mr. Casey also sued Police Chief Les Acker and the City of Federal Heights, asserting supervisory and municipal liability, respectively, under 42 U.S.C. § 1983. After holding that Officer Sweet and Officer Lor had not used excessive force the district court dismissed these claims because "claims of supervisory and municipal liability under section 1983 presuppose the existence of a constitutional violation." *Casey*, 2006 WL 2711760, at *4. Because we reverse the district court's grant of summary judgment for Officers Sweet and Lor, we also reverse its logically dependent grant of summary judgment for Chief Acker and the City, without prejudice to any other legal or factual defenses they may wish to present on remand.

## III. CONCLUSION

We **REVERSE** the district court's grant of summary judgment for all of the defendants and **REMAND** all of Mr. Casey's claims for further proceedings.