SMITH, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s opinion except the portion that holds, as a matter of law, that the officers did not use excessive force to arrest Carpenter. Supra Part II.C. Five officers entered Carpenter’s home after being advised that Carpenter may have had a stroke. Carpenter was agitated and moving back and forth in the room. At some point, Gage raised his taser and instructed Carpenter to stop walking or Gage would shoot; Carpenter did not comply. One of the officers grabbed Carpenter and took him to the ground.
According to Officer Paul, Carpenter landed face down in a corner between a wall and a couch. Officer James Johnson *652 was on his right side, next to the couch, and “Deputy Gage was ... by his left arm.” “Carpenter had his arms underneath him.” Carpenter testified that, when he was thrown to the ground, he couldn’t breathe, “so [he] put [his right] arm up on the couch and [was told] to get [his] arm off there. [He] told them [he couldn’t] breathe,” but “they just kept ta[s]ing [him] in the back.” When asked about the tasing, Carpenter responded:
I was ta[s]ed several times. I can’t tell you how many times. They just kept telling me to get my arm down and they just kept ta[s]ing me. I couldn’t breathe when I took my arm down. I couldn’t breathe and I kept telling them I couldn’t breathe and they didn’t care.
Counsel asked Carpenter, “Did you put your hands behind your back to be handcuffed when they commanded you to do so?” He replied:
I think I was on my belly, so I don’t know how my hands got back there. I had one hand kind of under me, and one up on the couch, so I don’t see how I could have put my hands back there. They were sitting on me, so how could you? I know with them sitting on me with this arm, I know my left arm was underneath me, how could I put it behind me?
“Viewing the record and drawing all reasonable inferences in the light most favorable to [Carpenter], while simultaneously viewing the facts from the perspective of a reasonable officer on the scene, we cannot say [the officers’] use of force was objectively reasonable as a matter of law.” Montoya v. City of Flandreau, 669 F.3d 867, 871 (8th Cir.2012) (quotation, citation, and alteration omitted). The officers threw Carpenter to the floor face down with his arms under him and sat on top of him. He told the officers repeatedly that he could not breathe and attempted to use his right arm to elevate himself enough to catch his breath. Once Carpenter told the officers that he could not breathe, reasonable officers sitting on top of him would not conclude that his attempts to elevate himself constituted resisting arrest.
Moreover, it defies reason that five police officers in control of a single subject would need to tase him repeatedly in order to handcuff him. The majority cites Mann for the proposition that “officers may use physical force to subdue an arrestee [who] fails to comply with orders to lie still during handcuffing,” supra Part II.C (citing Mann, 497 F.3d at 826), but that case is distinguishable. Mann involved the arrest of a suspect high on methamphetamine who officers forced out of his house with tear gas. Once he was outside, officers “ordered [the defendant] to come under a fence, get down on his stomach, and put his hands behind his back.” Mann, 497 F.3d at 824. “After [the defendant] disregarded the repeated instructions to get on his stomach” by continuing to twist onto his side, one of the officers ordered his canine to bite and hold the defendant’s leg for 15 seconds so they could handcuff him. The defendant “knocked the handcuffs out of [the officer’s] hands, and grabbed the barrel of [the officer’s] gun.” Id. He then “rose ... and ... continued to resist their attempts to handcuff him.” Id. One officer struck the defendant five times while two other officers handcuffed him. Id. In that case, the defendant offered no evidence to support his version of the facts, and video taken of the arrest did not contradict the officers’ factual assertions.
Viewing the facts in the light most favorable to Carpenter and crediting his testimony, officers were on top of him and were holding him face down prior to tasing him. Carpenter was moving, but he repeatedly told the officers he could not breathe. Given this evidence, a genuine *653 issue of material fact remains as to whether a reasonable officer would believe that Carpenter was resisting arrest when the officers tased him and, thus, whether the officers used excessive force. See Brown v. City of Golden Valley, 574 F.3d 491, 496-98 (8th Cir.2009) (court not convinced that officer’s use of taser on passenger in vehicle stopped after police chase was objectively reasonable; although passenger refused a direct order to get off of the phone, she posed a minimal security threat and was not resisting arrest or attempting to flee, officer was not faced with split-second decision, and circumstances did not constitute tense, uncertain, and rapidly evolving situation).
This does not end our analysis. “Our second inquiry in considering the denial of qualified immunity is whether the right violated was clearly established.” Brown, 574 F.3d at 499.
The [tjaser is a relatively new implement of force, and case law related to the [tjaser is developing. Several of our sister circuits have considered whether the deployment of a [tjaser during an arrest constitutes excessive force in violation of the Fourth Amendment. See, e.g., Parker v. Gerrish, 547 F.3d 1, 8-11 (1st Cir.2008) (upholding jury verdict that officer used excessive force in [tjasering an arrestee who had insulted the officers but also had complied with their requests and did not resist arrest); Zivojinovich v. Barrier, 525 F.3d 1059, 1071-73 (11th Cir.2008) (per curiam) (use of a [tjaser to subdue a suspect who had repeatedly ignored police instructions and continued to act belligerently found to be reasonably proportionate to the need for force); Casey v. City of Fed. Heights, 509 F.3d 1278, 1282-87 (10th Cir.2007) (use of a [tjaser and related force against a nonviolent misdemeanant who did not flee or actively resist arrest found to be excessive).... Id. at 498 n. 5. We recently held that “an officer’s use of a taser on a nonviolent, nonfleeing misdemeanant was an excessive use of force” in violation of clearly established law. Shekleton v. Eichenberger, 677 F.3d 361, 367 (8th Cir.2012). We also found it clearly established “[tjhat the level of force used must be justified in light of ‘the severity of the crime at issue,’ the suspect’s flight risk, and the immediacy of the risk posed by the suspect to the safety of officers and others.” Id. (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).
Viewing the facts in the light most favorable to Carpenter, no reasonable officer would believe that Carpenter was a flight risk — he was on the floor with five officers nearby or on top of him. And no reasonable officer would believe that he posed a safety risk — he was pinned to the floor with such force that he could not even catch his breath. The majority’s opinion points out that “Carpenter refused to offer his hands” in spite of repeated orders to do so. Supra Part II.C. But Carpenter in his deposition indicated that he was unable to offer his hands because “[the officers] were sitting on [him].” Contra. Brown v. Cwynar, No. 11-1948, 2012 WL 2045764, at *2 (3rd Cir. Jun. 7, 2012) (finding that, even if a plaintiffs Fourth Amendment rights were violated, the officer was entitled to qualified immunity because the plaintiff “resisted] arrest” by lying on top of both of his hands and failing to heed multiple warnings that “if he did not comply, he would be tased”); Hoyt v. Cooks, 672 F.3d 972, 975 (11th Cir.2012) (holding that an arrestee who was “lying on the ground,” “continued to resist[,j and would not allow both arms to be put behind his back” did not have his constitutional rights violated by officers who tased him repeatedly before handcuffing him).
*654 Because genuine issues of material fact remain, summary judgment is inappropriate. I therefore respectfully dissent.