**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JESUS ORNELAS,

     Plaintiff - Appellant,

v.

C. R. LOVEWELL, Trooper, in his
individual and official capacity,

     Defendant - Appellee.

No. 14-3087
(D.C. No. 2:11-CV-02261-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

On April 28, 2010, Kansas State Trooper C.R. Lovewell arrested Jesus Ornelas for

driving under the influence ("DUI"). Having stopped Ornelas only four blocks from his

home, Trooper Lovewell called Ornelas's family to give them the opportunity to pick up

Ornelas's car to avoid towing charges. Unfortunately, when his daughter arrived to

retrieve the car, Ornelas unexpectedly became combative and placed his leg outside of

Trooper Lovewell's patrol car. In trying to regain control of the situation and get Ornelas

fully back in the patrol car, Trooper Lovewell kicked Ornelas's leg, which was still

protruding from the car and blocking Trooper Lovewell from shutting the car's door. The

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

kick resulted in Ornelas suffering a broken tibia. Ornelas now seeks to hold Trooper Lovewell liable for this injury, bringing a claim under 42 U.S.C. § 1983 based on excessive force under the Fourth Amendment. The district court concluded that Trooper Lovewell was entitled to qualified immunity and granted his motion for summary judgment. Because we find that Ornelas has waived his argument before us that Trooper Lovewell violated a clearly established right, we agree that Trooper Lovewell was entitled to qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court.

## BACKGROUND[1]

*A. Factual Background*

On April 28, 2010, at about 11:45 p.m., Trooper Lovewell saw Ornelas's white Ford Expedition traveling southbound on I-35 in Johnson County, Kansas. Trooper Lovewell witnessed the car swerve onto the right shoulder before it exited I-35 onto Johnson Drive. Trooper Lovewell pursued the car and stopped it at the corner of Johnson Drive and Carter Street. Trooper Lovewell asked Ornelas to step out of the car, to perform field-sobriety tests, and to provide a preliminary breath test. Ornelas complied, but he failed the field-sobriety tests and the preliminary breath test. Trooper Lovewell then arrested Ornelas for DUI, handcuffed him, sat him in the front passenger side of his patrol car, and applied a seat belt across him.

---

[1] Since this case is before us on summary judgment, the facts here are stated in the light most favorable to Ornelas, the non-moving party. *See Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

2

After placing Ornelas in the front seat of the patrol car, Trooper Lovewell learned from Ornelas that he lived nearby and that a family member might be available to pick up the car, which would enable Ornelas to avoid towing charges. In response to Trooper Lovewell's second call to Ornelas's house using Ornelas's cell phone, Ornelas's son answered the phone and said he would pick up the car.

Soon afterward, Ornelas's daughter—rather than his son—arrived to pick up the car. While his daughter spoke with Trooper Lovewell, Ornelas somehow managed to maneuver himself so that he could honk the horn of the patrol car. Upon hearing the horn, Trooper Lovewell returned to the car and opened its passenger door to see why Ornelas was making a commotion. After seeing his daughter, Ornelas became upset, apparently believing that Trooper Lovewell was somehow trying to embarrass him. He began to curse and yell at Trooper Lovewell. Trooper Lovewell then tried to close the passenger door, but the door would not close because Ornelas had put his right foot and leg outside the door. In an attempt to dislodge his right leg (which was stuck outside of the partially closed door), Ornelas lifted his left leg across his body and pushed against the door. The door swung open. Soon after the door swung open, Trooper Lovewell kicked at Ornelas's leg, landing his shoe just below Ornelas's right kneecap and breaking Ornelas's tibia.

## B. Procedural Background

Ornelas sued Trooper Lovewell in the United States District Court for the District of Kansas, alleging that Trooper Lovewell had violated his Fourth Amendment right

against unreasonable seizure by using excessive force.[2] The district court granted Trooper Lovewell's motion for summary judgment, concluding that Trooper Lovewell was entitled to qualified immunity because Ornelas had not shown a violation of a constitutional right and, even if he had, he could not prove that Trooper Lovewell had violated a clearly established constitutional right. Ornelas now appeals this ruling.

## DISCUSSION

We review de novo a district court's grant of summary judgment on the basis of qualified immunity. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). As in traditional summary judgment, we view the evidence in the light most favorable to the non-moving party. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). But "[b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Id.* at 1114 (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)) (internal quotation marks omitted). When a defendant asserts qualified immunity, the onus is on the plaintiff to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). When reviewing a summary judgment order, the Supreme Court has counseled that we may decide "which of the two prongs of the qualified immunity analysis should be addressed

---

[2] Before the district court Ornelas also alleged that Trooper Lovewell's actions deprived him of his right to due process under the Fifth Amendment. He has not renewed that argument before this court.

4

first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Given the freedom to make this choice, we will first examine what makes a right clearly established. To demonstrate the infringement of a clearly established right, Ornelas must either direct us to "an on-point Supreme Court or published Tenth Circuit decision" or demonstrate that "the clearly established weight of authority from other courts [has] found the law to be as [he] maintains." *Quinn*, 780 F.3d at 1005 (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)) (internal quotation marks omitted). The case or cases must then allow us to conclude that "every 'reasonable official would have understood that what he [was] doing violate[d] [a clearly established] right.'" *Ashcroft*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The facts of the case or cases need not be exactly the same as Ornelas's. Rather, we consider the factual similarities of excessive force claims on a "sliding scale": "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)) (internal quotation mark omitted).

Ornelas contends that the district court erroneously resolved this issue by deciding disputed facts against him in contravention of the summary judgment standard. As the non-moving party, Ornelas argues that the court's decision to consider the case in this manner—deciding disputed facts and drawing inferences against him—skewed its view of whether Trooper Lovewell violated a clearly established right. Specifically, Ornelas

5

contends that the district court incorrectly determined that (1) Trooper Lovewell faced "rapidly evolving circumstances" and (2) Trooper Lovewell had a "self-defense interest" that justified his actions once Ornelas became agitated.[3] Ornelas believes that the district court misapplied the cases he cited as clearly establishing a violation of his Fourth Amendment right by evaluating them under its flawed understanding of the factual context of his case.

Trooper Lovewell counters that the district court correctly analyzed his use of force under the totality of the circumstances and that it did not err by construing the situation as rapidly evolving. Further, Trooper Lovewell notes that Ornelas's brief points us to no case that allows us to conclude that every reasonable official would have understood that Trooper Lovewell's actions violated Ornelas's clearly established rights. On this basis, Trooper Lovewell argues that we should affirm the district court.

We agree that Ornelas failed to provide this court with a single case that could serve as the basis for finding a clearly established right. Therefore, Ornelas has waived his argument that Trooper Lovewell violated a clearly established right. *See United States*

---

[3] The "self-defense interest" Ornelas refers to here appears to be the district court's finding that at the time Trooper Lovewell returned to the car, "a reasonable officer in his shoes would have believed that an effort to resist or fight back was in the offing so as to justify the use of force." The court based this finding principally on these facts, which were known to Trooper Lovewell at the time: (1) "Ornelas had somehow managed to honk the horn of [the] patrol car, despite being handcuffed with his hands behind him"; (2) "as [Trooper Lovewell] approached the car and opened the door, [he] could hear that Ornelas was 'agitated or enraged'"; (3) Trooper Lovewell could not close the passenger door when he attempted to do so, "and Ornelas admits he was pushing against the door"; and (4) Trooper Lovewell "faced Ornelas without any backup officers on the scene and [with] Ornelas's daughter following behind as he approached the patrol car."

*v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013) (holding that a plaintiff waived a claim before the appellate court when his opening brief merely stated that it "adopt[ed] and specifically incorporate[d] herein by reference" a motion he filed in district court related to that claim); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring an appellant to include in his brief "contentions and the reasons for them, with citations to the authorities . . . on which the appellant replies"). Given our decision to consider this prong first, we need not analyze the first prong of the qualified immunity analysis, which asks whether Trooper Lovewell violated Ornelas's constitutional right to be free from excessive force. *See Pearson*, 555 U.S. at 236. While we make no ruling on the question of whether Lovewell's use of force was excessive, we pause to consider it briefly here because, given the "sliding scale" under which we view excessive force cases, our analysis of the facts in this case informs our consideration of how similar a case or cases Ornelas would need to provide to demonstrate a clearly established right.

Simply put, we believe that—even assuming Trooper Lovewell's kick amounted to a use of excessive force—the kick was not egregious. Ornelas would thus have to provide a case with a substantially similar set of facts to prevail. *See Casey*, 509 F.3d at 1284. Trooper Lovewell was faced with a drunken man who, while compliant for most of their interaction, had suddenly become violently agitated. Even if one accepts that Trooper Lovewell did not have an overwhelming "self-defense interest," he was certainly entitled to take reasonable steps to maintain control of the situation and to ensure that Ornelas remained in the car. Ornelas's ability to honk the horn suggested to Trooper Lovewell that Ornelas may have

7

unbuckled his seatbelt. Trooper Lovewell thus may have felt the need to maintain control of the situation as much for Ornelas's protection as for his own: allowing a drunk, handcuffed individual to get out of a car on the roadside at night seems an obvious recipe for tragedy. Therefore, we can say that Trooper Lovewell's kick, in the abstract, was not an excessive use of force. Instead, determining whether it constituted excessive force would require an examination of whether Trooper Lovewell purposefully kicked Ornelas hard enough to break his tibia, or if in the fracas Trooper Lovewell accidentally hit Ornelas in a particularly vulnerable area of the leg.

We need not inquire further into these specifics. Even if Trooper Lovewell kicked Ornelas with unusual force, the factual circumstances underlying this situation demonstrate that Trooper Lovewell's actions were not "obviously egregious . . . in light of prevailing constitutional principles." *Id.* Given these circumstances, Ornelas would need to provide us with a case of close factual similarity to demonstrate the violation of a clearly established right. *See id.*

This he has failed to do. As Trooper Lovewell notes, Ornelas's brief cites to no case supporting his contention that Trooper Lovewell violated a clearly established right. Rather, Ornelas merely refers us—in a footnote—to the pages in his appendix that contain the district court's discussion of the cases Ornelas cited before that court. By failing to develop his argument on this claim *before this court*, Ornelas has waived the argument. *See Patterson*, 713 F.3d at 1250. Rule 28(a)(8)(A) of the Federal Rules of

8

Appellate Procedure[4] requires that an appellant must present in his brief his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Parties appearing before this court cannot satisfy Rule 28 by merely incorporating their claims by reference to either appendices or records from the court below. *See* 10th Cir. R. 28.4 ("Incorporating by reference portions of lower court . . . briefs or pleadings is disapproved and does not satisfy the requirements of Fed. R. App. P. 28(a) and (b)."). Rather, we have held that

> [a]llowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and unnecessarily complicate the task of an appellate judge. Consequently, we adhere to our rule that arguments not set forth fully in the opening brief are waived.

*Patterson*, 713 F.3d at 1250 (alteration in original) (quoting *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998)) (internal quotation marks omitted). Since Ornelas did not provide this court with any cases to demonstrate a clearly established right, he has waived this argument.[5]

---

[4] Before 2014, this rule was found in Fed. R. App. P. 28(a)(9)(A). *See Patterson*, 713 F.3d at 1250.

[5] We note that, even had Ornelas not waived this argument, the cases he set forth before the district court were plainly insufficient to show a clearly established right given the facts of his case. While he did not cite to any of these cases in his brief before us, at oral argument his counsel maintained that his best case for showing the violation of a clearly established right was *Casey*, 509 F.3d at 1278. In *Casey*, the plaintiff went to a Colorado municipal courthouse to contest a traffic ticket, and when he left the courthouse to retrieve money to pay his fine, he took his case file with him. *Id.* at 1279–80. Removing the case file from the courthouse may have been a misdemeanor under Colorado law. *Id.* When Casey was returning to the courthouse with both the money to pay the fine and the case file, a police officer confronted him about removing the case file from the courthouse. *Id.* at 1280. The

9

CONCLUSION

Based on the foregoing analysis, we AFFIRM the district court.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge

---

officer gave no command to Casey, and Casey neither resisted him nor made any commotion. *Id.* Despite this lack of communication, the officer put Casey into an arm lock and another officer approached and tased Casey. *Id.* Soon after, other officers arrived, helped handcuff Casey, and repeatedly banged his face into the concrete. *Id.* Another officer tased Casey at least once more while he was handcuffed. *Id.* These officers' conduct was far more egregious than Trooper Lovewell's conduct, and Casey—unlike Ornelas—did nothing to either resist or exacerbate the situation. Even were we to consider *Casey*, it would be insufficient to show that Trooper Lovewell violated Ornelas's clearly established right.

10