**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ZIA TRUST COMPANY, as Personal
Representative of Dylan Causey,
minor son of Jodie Ockle, and sole
beneficiary of Megan Dylan Causey,

      Plaintiff-Appellee,

NANCY CAUSEY; GLEN CAUSEY,

      Plaintiffs-Intervenors,

      v.

CARLOS MONTOYA,

      Defendant-Appellant,

and

COUNTY OF DONA ANA,

      Defendant.

No. 09-2006

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 08-CV-00077-KBM-CG)**

---

Kevin M. Brown (Steven L. Cash with him on the briefs), of Brown & German, Albuquerque, New Mexico, for Defendant–Appellant.

Richard A. Sandoval, Albuquerque, New Mexico, for Plaintiff–Appellee.

---

Before **LUCERO**, **McKAY**, and **HARTZ**, Circuit Judges.

**McKAY**, Circuit Judge.

In this appeal, Officer Carlos Montoya asks us to reverse the district court's denial of his motion for summary judgment on excessive force claims brought under 18 U.S.C. § 1983 by family members of a man Officer Montoya shot and killed while responding to a domestic disturbance. After reviewing the facts in the light most favorable to the non-moving party, we affirm the district court's ruling.

## BACKGROUND

As an initial matter, we first address the extent of our jurisdiction in this appeal. While a denial of summary judgment is not the type of final order immediately appealable to this court, "we [do] have interlocutory jurisdiction over denials of qualified immunity at the summary judgment stage to the extent that they turn on an issue of law." *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008) (internal quotation omitted). Thus, we can consider the "purely legal question of whether the facts alleged by the plaintiff support a claim of violation of clearly established law." *Walker v. City of Orem*, 451 F.3d 1139, 1154 (10th Cir. 2006). However, "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular

factual inference."[1] *Fogarty*, 523 F.3d at 1154. Accordingly, "[t]hose facts explicitly found by the district court, combined with those that it likely assumed, . . . form the universe of facts upon which we base our legal review." *Id.* With the above limitations in mind, we now set out a general description of the events at issue based on those facts explicitly found or likely assumed by the district court in considering Officer Montoya's motion. As required in reviewing a motion for summary judgment, we set out these facts "in the light most favorable to the nonmoving party." *Estate of Larsen ex rel. Sturdivan v. Muir*, 511 F.3d 1255, 1259 (10th Cir. 2008).

On the evening of July 2, 2007, Glen Causey called the Doña Ana County Sheriff's Department following a dispute with his adult son Megan. Officer Montoya and a second officer, Orlando Flores, responded to the call. Dispatch informed the two officers that Megan had mental health issues and that there were two firearms present at the residence. Upon arriving at the scene, the two officers were flagged down by an individual, later identified as Glen Causey. Officer Flores parked his patrol car two houses down from the scene and approached on

---

[1] In his brief, Officer Montoya argues that "[t]he factual disputes cited by the [c]ourt in denying [his] motion for summary judgment are not material." (Appellant's Br. at 20.) However, we decline to consider this portion of Officer Montoya's appeal, because, as explained above, we do not have jurisdiction over "challenges to the district court's findings to the extent they challenge the existence of disputed facts for summary judgment purposes." *Walker*, 451 F.3d at 1155.

foot, while Officer Montoya parked directly in front of the Causey home (despite having been trained not to do so).

Officer Montoya quickly exited his car, allegedly with his gun already drawn and without saying anything to anyone at the scene.[2]  An older model van had been backing down the driveway but had gotten stuck on a pile of rocks at the side of the driveway, either shortly before or shortly after the officers' arrival.  A man later identified as Megan was in the driver's seat of the van, and a child was seated in the passenger's seat.  Under the disputed facts, Officer Montoya placed himself anywhere between one and fifteen feet in front of the van at a sixty-five degree angle from the passenger side; the wheels of the van were pointed towards him. The van's headlights were on; however, Officer Montoya had dropped his flashlight and "it was dark with no street lights."  (Appellant's App. at 196.)

As Montoya stood in front of the van, with Officer Flores approaching from the driver's side yelling for Megan to exit the vehicle, the van—although allegedly still stuck on a pile of rocks—jumped forward about a foot.  In response Officer Montoya fired a single shot into the vehicle, hitting Megan in the neck.

---

[2] These facts are taken, in part, from Glen Causey's deposition testimony. Mr. Causey seems to have made some statements just after the incident that are inconsistent with his deposition testimony.  However, in considering this testimony the district court correctly noted that it was "inappropriate to weigh the credibility of the sworn deposition testimony in evaluating entitlement to summary judgment,"  (Appellant's App. at 195.).  *See Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) ("It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment.").

Megan then exited the van and began running towards Officer Flores, who subdued him using a taser. Megan later died as a result of the gunshot wound to his neck. At the time Officer Montoya shot Megan, neither he nor Officer Flores knew who Megan was or what his role was in the domestic violence call.

Zia Trust Company brought suit against Officer Montoya and Doña Ana County on behalf of Megan's minor son for excessive force in violation of the Fourth Amendment. Megan's parents later intervened in the suit. Following a period of discovery, the parties moved for summary judgment. With respect to qualified immunity, the court denied Officer Montoya's motion based on its conclusion that there were material issues of fact that could indicate that "Officer Montoya's use of deadly force [was] unreasonable." (Appellant's App. at 195.) On appeal, Officer Montoya argues that he is entitled to qualified immunity because his actions, when viewed under the totality of the circumstances, were objectively reasonable.

## DISCUSSION

We review a district court's denial of a motion for summary judgment that asserts qualified immunity de novo. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). However, we review

summary judgment motions raising qualified immunity differently because "qualified immunity shields government officials . . . from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Buck*, 549 F.3d at 1277. Thus, in order to overcome a motion for summary judgment, a plaintiff must first show that, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Fogarty*, 523 F.3d at 1155 (internal quotation omitted). If the plaintiff satisfies this initial burden, then he or she must show that the right was clearly established at the time of the violation. *Id.*

The plaintiffs have alleged, inter alia, that Officer Montoya's actions constituted excessive force in violation of the Fourth Amendment. We examine excessive force claims "under the Fourth Amendment standard of objective reasonableness." *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). In determining the objective reasonableness of an officer's conduct we look to the totality of the circumstances, viewing the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In so doing we recognize that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

We may also consider a number of factors, including: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen*, 511 F.3d at 1260. "The use of deadly force is justified under the Fourth Amendment if a reasonable officer in the Defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others." *Walker*, 451 F.3d at 1159 (internal quotations omitted).

Turning to the case at hand, we cannot say, viewing the record in a light most favorable to the plaintiffs, that Officer Montoya acted reasonably. First, according to Glen Causey's testimony, Officer Montoya exited his vehicle with his weapon already drawn and proceeded to a position in front of Megan's van without identifying himself as a police officer or, indeed, saying anything at all. It is unclear, at least under the plaintiffs' alleged facts, whether Megan even knew that Office Montoya was a police officer. Second, although the tires of the van were pointed toward Officer Montoya, the plaintiffs allege—and there is some support in the record—that it was obviously stuck on a retaining wall and that the van jumped forward less than a foot, if at all, when Megan revved the engine. Additionally, given the lighting conditions, whether or not Officer Montoya could even see the direction the tires were pointing is a material fact that has been hotly

disputed. Third, according to Officer Flores's testimony, Officer Montoya may have been standing up to fifteen feet away from the van at the time of the shooting. Although we have never laid down a *per se* rule regarding distance, we cannot say that a van fifteen feet away, which according to the plaintiffs was clearly stuck on a pile of rocks, gave Officer Montoya probable cause to believe that there was a threat of serious physical harm to himself or others. Finally, although Officer Montoya testified in his deposition that he saw Megan change gears and that he could see in Megan's face what he intended, as stated above, how close Officer Montoya was and what exactly he could see is disputed. Accordingly, reading the record in the light favorable to the plaintiffs, it is not clear that Megan manifested an intent to harm Officer Montoya or anyone else at the scene. Our analysis of course only accounts for the plaintiffs' version of events, a version which a jury may later reject. However, under this version we agree with the district court that the plaintiffs have met their burden of showing a constitutional violation.

Having determined the existence of a constitutional violation for purposes of summary judgment, we must now consider whether the law was clearly established at the time of the violation. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cruz v. City of Laramie*, 239 F.3d

1183, 1187 (10th Cir. 2001) (internal quotation omitted). However, "[w]e do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself." *Weigel v. Broad*, 544 F.3d 1143, 1154 (10th Cir. 2008); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). Viewing the record in the light most favorable to the plaintiffs, we have already determined that Officer Montoya did not have "probable cause to believe that there was a serious threat of serious physical harm" to himself or others. *Walker*, 451 F.3d at 1159. As such, Officer Montoya violated clearly established law when he used deadly force against Megan Causey.

For the foregoing reasons, we **AFFIRM** the district's court denial of Officer Montoya's summary judgment motion.