**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PAUL KOZEL, an individual, d/b/a
The Wranglers Club,

      Plaintiff-Appellee,

v.

JIM DUNCAN,

      Defendant-Appellant.

No. 10-7065
(D.C. No. 6:08-CV-00471-FHS)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, **PORFILIO**, Senior
Circuit Judge.

---

In this civil-rights action, Defendant-Appellant Jim Duncan, the Sheriff of

Pushmataha County, Oklahoma, interlocutorily appeals from the district court's

order rejecting his qualified-immunity defense and partially denying his summary

judgment  motion.  We reverse.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND[1]

Plaintiff-Appellee Paul Kozel owns and operates the Wranglers Club, a dance club and pool hall in Pushmataha County that sells low-point beer to its patrons. Wranglers admits persons under the legal drinking age, but it excludes them from a designated bar area. Nevertheless, all patrons are permitted to leave with a cup and to re-enter with that cup. Local law enforcement agencies have received complaints of underage drinking in Wranglers. Mr. Kozel recognizes that eliminating Wranglers' liberal cup policy could reduce the risk of underage drinking. Aplt. App., Vol. 1 at 135.

In January 2007, Mr. Kozel complained to the district attorney's office about a sheriff's deputy who had begun parking his patrol car nightly in the Wranglers parking lot to watch for illegal activity. The following weekend, more patrol cars showed up in the Wranglers lot, as well as on the street in front of the club. Additionally, Sheriff Duncan and his deputies began entering Wranglers during its hours of operation. According to Mr. Kozel, they "confront[ed]

---

[1]     Preliminarily, we note that on appeal from the denial of qualified immunity, our jurisdiction is limited to "the purely legal question of whether the facts alleged by the plaintiff support a claim of violation of clearly established law." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1152 (10th Cir. 2010) (quotation omitted). "Accordingly, those facts explicitly found by the district court, combined with those that it likely assumed, form the universe of facts upon which we base our legal review." *Id.* at 1152-53 (quotation and alterations omitted). "Our jurisdiction also extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1276-77 (10th Cir. 2008) (quotation omitted).

customers, check[ed] their identification cards and perform[ed] sobriety checks." Aplee. Br. at 29. They also "shin[ed] their flashlights in" patrons' faces. Aplt. App., Vol. 2 at 271, 273. And on at least one occasion, they turned the lights on inside Wranglers, turned off the music, and "line[d] everyone up for sobriety tests," preventing some patrons from using the restroom for over an hour. *Id.*

Alleging "the harassment of his patrons" and his business, Mr. Kozel sued Sheriff Duncan, several deputies, and other law enforcement personnel in federal district court. *Id.*, Vol. 1 at 42, 50. He advanced claims under the federal Constitution and state common law. The district court granted the deputies and other law enforcement personnel summary judgment. But as to Sheriff Duncan, the district court granted only partial summary judgment, leaving in place Mr. Kozel's official-capacity claims for First Amendment retaliation, Fourth Amendment unlawful entry, and Fourteenth Amendment harassment, and two state-law claims for assault and battery. And, while the district court found that Sheriff Duncan in his individual capacity had qualified immunity from the Fourteenth Amendment claim, the court denied Sheriff Duncan immunity in his individual capacity from the First and Fourth Amendment claims.

Sheriff Duncan now appeals from the denial of immunity on those two federal claims.

## DISCUSSION

### I. Standards of Review

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted). "We review de novo a district court's decision to deny a summary judgment motion that asserts qualified immunity." *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (quotation omitted). Specifically, when the defendant asserts "the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test by showing (1) that the defendant violated a constitutional or statutory right, and (2) that this

---

[2]     Amendments to Rule 56 that took effect on December 1, 2010, moved the summary judgment  standard from subsection (c) to subsection (a), changed genuine "issue" to genuine "dispute," and changed "[t]he judgment sought should be rendered if" to "[t]he court shall grant summary judgment if." *See* Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments). But the "standard for granting summary judgment remains unchanged." *Id.*

right was clearly established at the time of the defendant's conduct." *Id.*

(quotations omitted). A plaintiff's failure to meet either requirement requires

reversal of the district court's order. *See Swanson v. Town of Mountain View*,

577 F.3d 1196, 1199 (10th Cir. 2009).

## II. First Amendment[3]

Mr. Kozel contends that Sheriff Duncan retaliated against him for

complaining about the deputy who was conducting surveillance from Wranglers'

parking lot. "Even if an official's action would be unexceptionable if taken on

other grounds, when retaliation against Constitutionally-protected speech is the

but-for cause of that action, this retaliation is actionable and subject to recovery."

*Howards v. McLaughlin*, 634 F.3d 1131, 1143 (10th Cir. 2011) (quotations

omitted). Accordingly, "[t]o establish a First Amendment retaliation claim, a

plaintiff must show that (1) he was engaged in constitutionally protected activity,

(2) the government's actions caused him injury that would chill a person of

ordinary firmness from continuing to engage in that activity, and (3) the

government's actions were substantially motivated as a response to his

---

[3]     In relevant part, the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend I. "By their terms, the provisions of the Bill of Rights curtail only activities by the Federal Government, but the Fourteenth Amendment subjects state and local governments to the most important of those restrictions," including the First and Fourth Amendments. *Oliver v. United States*, 466 U.S. 170, 186 n.3 (1984) (citation omitted).

constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d

1155, 1165 (10th Cir. 2009).

The district court recognized the applicability of this three-pronged test, but

engaged in only a summary analysis:

> [Mr. Kozel] complained about [Sheriff] Duncan and his deputies to
> the Pushmataha County District Attorney's Office and the next
> weekend officers began parking their patrol units in the parking lot
> of Wranglers. The court finds this is an adequate showing to deny
> summary judgment as to this claim. The temporal proximity of the
> conduct justifies a permissible inference as to [Sheriff Duncan's]
> intent or failure of supervision.[4]

---

[4] "To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (quotations and alteration omitted). Sheriff Duncan appears to argue that there is insufficient evidence to infer his involvement in the increased law enforcement presence at Wranglers. But at the qualified-immunity stage, we may not "review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Zia Trust Co.*, 597 F.3d at 1152 (quotation omitted).

Also, Sheriff Duncan argues in his reply brief that Mr. Kozel's First Amendment retaliation claim was not pleaded in the complaint. Because Sheriff Duncan's immunity defense can be resolved without addressing his pleading argument, we do not consider it. We note, however, that the argument has jurisdictional and prudential problems. *See Bryson v. Gonzales*, 534 F.3d 1282, 1285 (10th Cir. 2008) ("The only issues that properly belong in an interlocutory appeal for qualified immunity are the existence of a constitutional violation and whether it was clearly established at the time of the defendant's conduct."); *Lauck v. Campbell Cnty.*, 627 F.3d 805, 810 n.2 (10th Cir. 2010) ("We decline to consider arguments raised for the first time in a reply brief." (quotation omitted)). Because we do not consider Sheriff Duncan's pleading argument, Mr. Kozel's motion to strike is denied as moot.

Aplt. App., Vol. 2 at 534 (quotation and citation omitted).  Further, the district court did not address whether the constitutional right purportedly violated was clearly established.

We have "the discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Swanson*, 577 F.3d at 1199 (quotation omitted). Accordingly, we focus our attention on whether Sheriff Duncan violated a clearly established constitutional right.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co.*, 597 F.3d at 1155 (quotation omitted).  While there does not need to be a "prior case[ ] with precisely the same facts," *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), "[o]ur inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition," *Bowling*, 584 F.3d at 964 (quotations omitted).  The pertinent question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* (quotation omitted).

Even if Sheriff Duncan violated the First Amendment by increasing the law enforcement presence at Wranglers because Mr. Kozel complained about that presence in the first place, we conclude that "the law did not put [Sheriff Duncan]

on notice that his conduct would be clearly unlawful." *Id.* (quotation omitted). In arguing that the law was clearly established, Mr. Kozel cites only the general proposition that the "'First Amendment bars retaliation for protected speech.'" Aplee. Br. at 25 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)). But that general proposition alone would not place a reasonable officer on notice that he would violate the law by increasing the law enforcement presence at a bar that has generated complaints of underage drinking, that maintains a policy of allowing patrons to exit and re-enter with cups (which may in fact facilitate underage drinking), and that has complained of the presence of law enforcement personnel.

Further, our own independent survey of the case law reveals no sufficiently analogous Supreme Court or Tenth Circuit case. And there is no clear weight of authority from other courts showing the unlawfulness of conduct similar to Sheriff Duncan's. Indeed, there is authority that arguably supports Sheriff Duncan's conduct. *See, e.g., Moles v. Griffy*, No. 00-2147, 2001 WL 1152984, at *4 (E.D. Pa. Sept. 18, 2001) (rejecting the plaintiff bar owner's First Amendment retaliation claim because, among other things, "[i]ncreased police presence, the verification of patrons' ages upon entering the bar, and issuance of citations for violations of the law are appropriate functions of the police when dealing with an establishment that is the subject of so many complaints").

Because First Amendment retaliation law was not so clearly established that a reasonable officer standing in Sheriff's Duncan's shoes would have recognized the unlawfulness of his conduct, qualified immunity applies.

### III.  Fourth Amendment[5]

The district court analyzed Mr. Kozel's Fourth Amendment claim under the criteria for warrantless inspections of closely-regulated industries.  *See United States v. Johnson*, 408 F.3d 1313, 1320 (10th Cir. 2005) (observing that such an inspection is constitutional if there is "a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made"; the inspection is "necessary to further the regulatory scheme"; and "the statute's inspection program . . . provide[s] a constitutionally adequate substitute for a warrant").  In denying Sheriff Duncan summary judgment, the district court stated that there was no regulatory scheme that justified the entries into Wranglers, and that they "seem to have been based upon whim."  Aplt. App., Vol. 2 at 535.  The district court did not address whether Sheriff Duncan violated clearly established law.

We conclude that the district court erred in applying the closely-regulated industries exception to the warrant requirement.  The entries into Wranglers were not "administrative inspections designed to enforce regulatory statutes." *New*

---

[5]    In relevant part, the Fourth Amendment provides:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. Amend IV.

*York v. Burger*, 482 U.S. 691, 700 (1987). Rather, given the reports of underage drinking in Wranglers, officers entered in a traditional investigatory capacity for "gathering . . . criminal evidence" and enforcing the penal laws. *Id.*; *see also id.* at 712-13 (stating that "[a]dministrative statutes and penal laws may have the same ultimate purpose of remedying the social problem, but they have different subsidiary purposes and prescribe different methods of addressing the problem"). Consequently, because this case does not involve administrative inspections, "the well-established exception to the warrant requirement for administrative inspections of 'closely regulated' businesses," *id.* at 712, does not apply. *Cf. Ferguson v. City of Charleston*, 532 U.S. 67, 83 n.21, 86 (2001) (holding that hospital's administration of urine tests to detect cocaine use by pregnant women implicated the Fourth Amendment, and noting that the tests were not analogous to administrative inspections because they were "specifically designed to gather evidence of violations of penal laws").

The appropriate analysis of the warrantless entries at issue here concerns whether Mr. Kozel "ha[d] a constitutionally protected reasonable expectation of privacy" in Wranglers. *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quotation omitted). While "[t]he Fourth Amendment protects an individual's reasonable expectation of privacy in commercial premises," *United States v. Bute*, 43 F.3d 531, 536 (10th Cir. 1994), "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment

-10-

protection," *Katz v. United States*, 389 U.S. 347, 351 (1967).  Thus, law enforcement officers do not need a warrant to enter, during normal hours of operation, a business that invites the general public inside.  *See Maryland v. Macon*, 472 U.S. 463, 469 (1985); *United States v. Sandoval-Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006); *Bute*, 43 F.3d at 537; *United States v. Berkowitz*, 429 F.2d 921, 925 (1st Cir. 1970).

Mr. Kozel argues that the law enforcement entries into Wranglers were unlawful because, unlike the general public, the officers did not pay the cover fee.  This same argument was rejected by the Seventh Circuit in *Andree v. Ashland County*, 818 F.2d 1306 (7th Cir. 1987).  In that case, sheriff's deputies entered the grounds of an outdoor music festival to check for liquor-law violations, but they refused to pay the admissions price.  The court held that the deputies' gratuitous entry was at most a common-law trespass, but it did not "make a constitutional difference" to whether the festival owners had an objectively reasonable expectation of privacy in the festival, which was held in a field, open to the general public, and involved the sale of alcohol.  *Id.* at 1314-15.  We agree with the Seventh Circuit that payment of an entry fee is generally not relevant to the Fourth Amendment analysis.

Mr. Kozel also argues that Sheriff Duncan and his deputies exceeded the scope of Wranglers' public invitation by "confronting customers, checking their identification cards[,] and performing sobriety checks."  Aplee. Br. at 29.  The

-11-

fact that a law enforcement entry is motivated by an investigatory purpose does not render the entry unlawful. *See Macon*, 472 U.S. at 469. But when officers exceed the limits of consent afforded the general public in the premises, the Fourth Amendment will be violated. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329 (1979) (rejecting "the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees"). For instance, in *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 196-97 (5th Cir. 2009), the Fifth Circuit held that law enforcement officers exceeded the scope of a nightclub's public invitation "by entering with weapons drawn in a S.W.A.T. team raid," searching the club, its attic and a separate apartment, and seizing and searching the club's patrons and employees in an attempt to undercover evidence of narcotics possession, fire-code violations, and alcohol sales to minors.

While the law enforcement intrusions into Wranglers were not as substantial as those that occurred in *Club Retro*, at least one of the intrusions here was protracted and involved an assertion of law enforcement authority over the entire establishment. Officers turned the lights on and the music off. They seized patrons for over an hour and lined them up for sobriety checks. This conduct falls outside the limits of consent afforded the general public and violates the Fourth Amendment.

-12-

To the extent, however, that there were lesser intrusions, limited in scope to sheriff's deputies observing patrons for signs of illegal behavior in the public areas of Wranglers—including using a flashlight in the darkened areas in order to visually inspect patrons' identification—the parameters of the public invitation were not exceeded. Indeed, even Wranglers' employees "closely monitor" the patrons for indications of underage drinking. Aplee. Br. at 7. And, even without reasonable suspicion, officers may approach individuals in a public place, ask them questions, and request identification. *United States v. Drayton*, 536 U.S. 194, 200-01 (2002).

Although we have determined that there was a constitutional violation in the prolonged sobriety detention, we must still consider whether a reasonable officer in Sheriff Duncan's position would have been on notice that his conduct was unlawful. Mr. Kozel has not met his burden in this regard. Specifically, his reliance on *Donovan v. Dewey*, 452 U.S. 594 (1981), is misplaced. There, the Supreme Court declared that commercial property cannot be "searched for contraband or evidence of crime" unless there are exigent circumstances, consent, or a warrant. *Id.* at 598 n.6. As noted above, however, there is simply no search for Fourth Amendment purposes when officers, "albeit motivated by an investigative purpose," enter a business that is open to the public and examine what is readily accessible to the public. 1 Wayne R. LaFave, Search and Seizure § 2.4(b), at 627, 629 (4th ed. 2004) (collecting cases).

While the proscription against warrantless "wholesale searches and seizures" of a business open to the public is well established, *see Lo-Ji Sales, Inc.*, 442 U.S. at 329, it is too general to provide notice that officers violate a bar owner's constitutional rights by detaining patrons for sobriety checks after receiving reports of underage drinking in a bar with a cup policy that may facilitate underage drinking. Granted, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). But where, as here, that general rule would not have placed a reasonable official "on fair notice that the described conduct was unconstitutional," it will not defeat immunity. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

Thus, even though there was a Fourth Amendment violation in detaining Wranglers' patrons for sobriety checks, because Fourth Amendment law did not clearly establish the illegality of that conduct, Sheriff Duncan is entitled to qualified immunity.

## CONCLUSION

The judgment of the district court is REVERSED, and this matter is REMANDED with instructions that Sheriff Duncan's summary judgment motion be further granted to the extent he asserts qualified immunity in his individual

capacity against Mr. Kozel's First and Fourth Amendment claims.  Mr. Kozel's motion to strike is DENIED as moot.

Entered for the Court


Jerome A. Holmes
Circuit Judge