**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 9, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL WHITINGTON,

      Plaintiff-Appellant,

v.

CHRISTINE MOSCHETTI; LT.
TRUJILLO; C/O REAL; CAPT.
GONZALES; LT. STEINBECK;
WARDEN OF DRDC IN 1998;
PLAINTIFF'S CASE MANAGER IN
1998 AT DRDC; CAPT. BUTLER;
LIMON'S IWLP SUPERVISOR;
WARDEN ESTEP; CAPT.
MICHAELS; C/O GONZALES;
ASST. WARDEN OF FLCF; CDOC
MEDICAL DIRECTOR; JOE ORTIZ;
WILLIAM ZALMAN; DIRECTOR OF
CDOC MENTAL HEALTH;
THOMAS BULLARD; E. LITTLE;
LT. VAN METER; WARDEN
LAYBA; SCCF PROGRAMS
MANAGER,

      Defendants-Appellees.

No. 10-1247
(D.C. No. 1:07-CV-00663-LTB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Michael Whitington, an inmate of the Colorado Department of Corrections (CDOC), brought this pro se action alleging violations of his civil rights by various CDOC officials. The district court granted summary judgment to all the defendants, denied Whitington's motion for leave to amend his Second Amended Complaint (SAC), and dismissed the action. He appeals, and we affirm.

**BACKGROUND**

The SAC asserted numerous claims against correctional officers at several CDOC facilities and administrators at CDOC headquarters, alleging that defendants (1) at Denver Reception and Diagnostic Center (DRDC) violated Whitington's due-process rights by classifying him as a violent offender; (2) at Arkansas Valley Correctional Facility (AVCF) retaliated against him for filing grievances and complaints to the warden; (3) at Limon Correctional Facility (LCF) (a) discriminated against him based on his mental disability by firing him, not allowing him to have a job, and punishing him for not having a job; and (b) transferred him in retaliation for his litigation, grievances, and complaints to the warden; (4) at Fort Lyon Correctional Facility (FLCF) transferred him in retaliation for his grievances and complaints; (5) at San Carlos Correctional Facility (SCCF) refused to create jobs and programs for mentally disabled inmates; (6) at Sterling Correctional Facility (SCF) denied his due-process and

-2-

First Amendment rights by destroying return-address labels on mail to him; and (7) at various facilities and through policies adopted at CDOC headquarters denied him treatment for his Hepatitis-C.

On appeal Whitington presents arguments challenging the dismissal of some of these claims. He abandons others by making no argument concerning them. We consider only the claims argued in his briefing, and will discuss the specific facts applicable to each claim as part of our analysis of that claim.

**ANALYSIS**

**1. Standard of Review**

"We review the grant of summary judgment de novo, applying the same standard as the district court . . . ." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the record on summary judgment in the light most favorable to the nonmoving party. *Gwinn*, 354 F.3d at 1215.

We review the district court's denial of Whitington's motion for leave to amend his complaint for an abuse of discretion. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007). Because he appears pro se, "we review his pleadings and other papers liberally and hold them to a less

stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

### 2. Employment-Discrimination Claim

The SAC alleged that defendants at LCF and SCCF discriminated against Whitington as a mentally disabled person by denying him equal opportunities in prison employment and programs. He contended that the defendants' actions violated the Equal Protection Clause, the Americans With Disabilities Act (ADA), and the Rehabilitation Act. In his appellate briefing Whitington presents no specific argument relevant to his ADA or Rehabilitation Act claims. Accordingly, we address only his constitutional claims arising under the Equal Protection Clause.

### A. Limon Correctional Facility

The magistrate judge recommended that summary judgment be granted on this claim because Whitington had made "no showing that he was treated differently from a similarly situated person at LCF." R., Vol. I at 234. The district court adopted this recommendation. We affirm, but for slightly different reasons.

Whitington alleged that he was housed at LCF from April to August 2005. When he first arrived at LCF, he was given a job on the Inmate Work Labor Program (IWLP) work crew. The IWLP crew is a temporary assignment that all

-4-

inmates must complete for 30 days before they can receive a permanent job. According to Whitington, it pays less than other jobs at the prison.

Whitington alleged that because he was mentally disabled the IWLP supervisor would not allow him to work. Instead, the supervisor sent him back to his unit while the other inmates worked, telling Whitington he would mark him down as if he had worked. At some point, however, this arrangement ceased and the IWLP fired Whitington. He claimed that he was told that the firing was because of his mental disability. As a result of being without a job, he allegedly was sanctioned by being locked in his cell for approximately 21 hours per day. He was later reinstated on the IWLP crew but again was not permitted to work as other inmates were because of his disability.

In response to Whitington's allegations, defendants submitted an affidavit from Susan Butler, his case manager at CDOC. She presented a different version of events. She explained that Whitington was assigned to the IWLP when he arrived at the LCF on April 12, 2005, but was "released from the IWLP on April 28, 2005 because he wanted to work in Food Service." *Id.* at 179. He was "hired for Food Service on April 29, 2005 and was released from Food Service on May 9, 2005 because he was medically unable to participate in this position." *Id.* at 179-80. He returned to work on the IWLP from May 23 until June 7, 2005, when he was again released for medical reasons. He was then placed back in the IWLP on July 11, 2005, where he remained employed until he left the LCF.

-5-

"The Fourteenth Amendment guarantee of equal protection is essentially a direction that all persons similarly situated should be treated alike." *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1737 (2010) (internal quotation marks omitted). Whitington asserts an equal-protection claim based on disability. Disability is not a "suspect classification" for equal-protection purposes. *See, e.g., Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005). Nor did Whitington have a fundamental right to a prison job. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

Because he did not assert a fundamental right or differential treatment based on a suspect classification, Whitington was required to establish that his treatment was not reasonably related to some legitimate penological purpose. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). To meet this burden, he had to present facts sufficient to "overcome a presumption of government rationality." *Brown v. Zavaras*, 63 F.3d 967, 971-72 (10th Cir. 1995). He failed to meet this burden.

"[I]n response to a properly supported motion for summary judgment, a non-movant must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial on the claim or defense under consideration." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Whitington did not respond to the defendants' motion for summary judgment on this claim. In particular, he

presented no evidence to counter the assertions made in Butler's affidavit, although we may treat his verified complaint as an affidavit for summary-judgment purposes, *see Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir.) (verified complaint may be treated as affidavit if it satisfies Fed. R. Civ. P. 56 standards), *cert. denied*, 131 S. Ct. 469 (2010).

Even so, the only significant factual dispute involves whether Whitington was fired from his IWLP job (as he claims) or voluntarily left it to pursue a food service job (as Butler asserts). And that dispute is insufficient to prevent the entry of summary judgment. Whitington failed to dispute the defendants' assertion that he proved medically incapable of performing the jobs to which he was assigned. He failed to argue that being removed from jobs he was incapable of performing (or being paid for them without being required to show up for work) was not rationally related to legitimate penological purposes such as ensuring his safety and that of other inmates.

Whitington also has not asserted that other, nondisabled inmates were never assigned to the IWLP team after their first 30 days at LCF. Finally, he failed to show that his extended hours of confinement during periods when he was on

unassigned status were not rationally related to a legitimate penological purpose such as the need to account for and control unemployed inmates. In short, he has failed to present evidence that could overcome the presumption of government rationality. *See Brown*, 63 F.3d at 971-72; *cf. Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010) (prisoner claims often will not be plausible absent factual allegations showing why usual constitutional justifications do not apply). We therefore affirm summary judgment on this claim.

## B. San Carlos Correctional Facility

SCCF is a facility that houses mentally ill inmates. Whitington was assigned there from August 2006 until February 2007. He asserted that the defendants failed to provide jobs and programs at SCCF comparable to those at other facilities, thereby discriminating against mentally disabled inmates like himself who were assigned to SCCF. He also asserted that when he was provided work at SCCF, he was paid less than he would have been paid at other facilities within CDOC.

The district court granted summary judgment on this claim because "the privileges, programs and other accouterments of one prison need not be extended to all within the same system." R., Vol. I at 233 (magistrate judge recommendation). We agree. Given the special population at SCCF, it would be natural for it to focus on a different set of inmate services than other facilities do. It is not necessary for it to duplicate programs in all other facilities as well as

-8-

provide for the particular needs of the mentally ill.  Again, Whittington has failed

to present any evidence to overcome the presumption of rationality of SCCF's

choice of programs.[1]

### 3.  Seizure of Mail

Whitington complained that while at SCF he received a letter and a card

from the prison mailroom with the return-address labels torn off by mailroom

staff.  The mailroom staff took this action in reliance upon CDOC policy, which

provides that mail may be censored if it contains "decorative stamps or stickers

on the envelopes or contents."  R., Vol. I at 190-91.  Whitington alleged this

prevented him from writing back to the friend who had sent him the mail, thus

purportedly violating his "right to due process and his first amendment right to

write his friend."  *Id.* at 95 ¶ 124.

"Correspondence between a prisoner and an outsider implicates the

guarantee of freedom of speech under the First Amendment and a qualified liberty

interest under the Fourteenth Amendment."  *Treff v. Galetka*, 74 F.3d 191, 194

(10th Cir. 1996).  *See also Procunier v. Martinez*, 416 U.S. 396, 409-19 (1974)

(recognizing First Amendment and Fourteenth Amendment interests in inmate

correspondence), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S.

---

[1]     Whitington also claims that his "mental health care at SCCF was substandard," Aplt. Br. at 12, but he provides no details and no cogent appellate argument on this point.  We therefore do not address this contention.

401, 413-14 (1989). The magistrate judge concluded that Whitington's allegations concerning this claim, "taken as true, simply do not rise to the level of a constitutional violation" because the return-address labels were removed without punitive intent as part of a content-neutral policy that did not violate Whitington's rights. R., Vol. I at 235. We affirm, although without reaching the constitutional issues. *See Baca v. Sklar,* 398 F.3d 1210, 1216 (10th Cir. 2005) (In considering summary-judgment determinations, court of appeals may affirm district court's grant of summary judgment for any reason supported by record.) We conclude that even if Whitington can show a constitutional violation, the defendants are entitled to qualified immunity concerning this claim.

Perhaps a prisoner's constitutionally protected interest in maintaining communication with nonprisoners includes the right not to have a nonprisoner's address label destroyed without notice to the prisoner. But the defendants, who have been sued in their individual capacities, are protected from liability by qualified immunity if the constitutional right allegedly violated was not clearly established at the time of their challenged actions.

"Qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (internal quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (internal quotation marks omitted). Although there does not need to be a "prior case[ ] with precisely the same facts," *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), "[o]ur inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition," *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (internal quotation marks omitted). The pertinent question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* (internal quotation marks omitted).

Whitington appears to assert two rights: a First Amendment right to receive the content of return-address labels in order to use the information provided to correspond with a friend outside the prison, and due-process rights to be notified of the prison's decision to dispose of the return-address labels and to be afforded an opportunity to be heard about how they should be disposed of. But these rights were certainly not clearly established when the return-address labels were destroyed. Although courts have considered whether a prisoner is entitled to correspondence when the correspondence contains labels or stickers, *see, e.g., Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990), Whitington has not cited, nor have we found, any case finding a constitutional violation in which the

-11-

prisoner received the enclosed letter but was merely denied a return-address label associated with it. Suggesting the contrary, we have held that an inmate who challenged a policy of returning correspondence with stickers to the sender had not shown the violation of any protected right. *See id.* We noted that the inmate had "pointed to nothing in the record suggesting that personal correspondence sent without the offending stickers or labels was not forwarded to him." *Id.* Here, Whitington concedes that after the return-address labels were removed, he received the correspondence to which they had been attached.

In light of our holding in *Smith* and the lack of in-point authority that would have put the defendants on notice concerning the alleged illegality of their conduct, Whitington has failed to show that the defendants violated clearly established law. The defendants were therefore entitled to qualified immunity, and summary judgment was properly entered for them on this claim.

### 4. Denial of Hepatitis C Treatment

The SAC alleged that Whitington's Hepatitis-C condition met CDOC's requirements for treatment of the disease, but that the defendants had delayed this treatment by (1) failing to provide timely notice that he needed treatment and qualified for it, (2) requiring him as a condition of receiving treatment to take drug and alcohol classes that he had already taken, and then (3) failing to provide him with adequate opportunities to take the classes. He claimed that these delays

constituted cruel and unusual punishment in violation of his Eighth Amendment rights.

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). An Eighth Amendment claim has both an objective component (the deprivation must be sufficiently serious) and a subjective component (the official must have acted with a sufficiently culpable state of mind). *See id.* "In cases challenging the conditions of a prisoner's confinement, [including a claim concerning medical treatment,] the subjective standard is one of deliberate indifference to inmate health or safety." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999). "Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody." *Id.* at 811.

The district court determined that Whitington failed to establish either the objective or the subjective elements of his Eight Amendment claim. We agree with the district court's analysis concerning the objective component, and hence need not discuss the subjective component.

Whitington argues that he completed a drug-and-alcohol treatment program sometime between 2000 and 2001 and was therefore eligible for Hepatitis C

treatment when he arrived at LCF and began requesting treatment in April 2005.[2]

But "[d]elay in medical care can only constitute an Eighth Amendment violation

if there has been deliberate indifference *which results in substantial harm.*" *See*

*Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (internal quotation marks and

brackets omitted) (emphasis added)).

Defendants presented expert evidence that there was no such harm.

Together with their summary-judgment motion, they submitted a thorough

affidavit from Dr. Paula Frantz, Chief Medical Officer of the CDOC. R., Vol. I at

297-321. In 25 pages Dr. Frantz detailed Whitington's medical care in the CDOC

from August 24, 1998, through July 22, 2009. She concluded: "There is no

evidence that Mr. Whitington has end stage liver disease. Hepatitis C progresses

slowly, typically over the course of decades. There is no evidence to suggest that

Mr. Whitington has had substantial progression of liver disease while waiting for

stabilization of his psychiatric illness and completion of drug and alcohol

programs." *Id.* at 319. Whitington offered no contrary evidence. We conclude

that he failed to show substantial harm from the defendants' alleged deliberate

indifference to his serious medical condition.

---

[2]     There appears to be a factual dispute concerning whether Whitington
satisfied the treatment requirement with classes he took before 2005. There is no
dispute, however, that he agreed to retake and complete the classes in 2005,
essentially conceding that he would need to complete them if he wished to receive
treatment. He did in fact complete the classes on October 17, 2008, through the
Therapeutic Community program.

### 5. Leave to Amend Complaint

On November 30, 2009, Whitington filed a motion for leave to amend his second amended complaint. The proposed amendment would have refined and supplemented his Eighth Amendment claim relating to denial of Hepatitis C treatment. The district court denied him leave to amend, reasoning that the amendment was both untimely and futile. Discerning no abuse of discretion in this ruling, we affirm.

### 6. Temporary Restraining Order

On September 23, 2009, Whitington filed a motion for Temporary Restraining Order and Preliminary Injunction, seeking to compel the CDOC to return to him documents that were confiscated from his cell, to return to him all other authorized property allegedly taken from him, to reinstate his legal copying privileges, and to refrain from harassing him. The district court concluded that he had failed to meet any of the criteria for injunctive relief. Discerning no abuse of discretion, we affirm for substantially the reasons stated by the magistrate judge in her report and recommendation.

### 7. Request for Counsel

Finally, Whitington complains that the district court improperly denied him appointment of counsel. We review the denial of a motion for appointment of counsel in a civil case for abuse of discretion. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "The burden is upon the applicant to convince

the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985) (per curiam). We discern no abuse of discretion in the district court's denial of appointment of counsel, and hence affirm.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge