**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 15, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER BORNEMAN,

  Plaintiff-Appellant,

v.

TIMOTHY ROZIER; CAPTAIN
MAPLES,

  Defendants-Appellees,

and

DERRICK MILLER,

  Defendant.

No. 10-6045
(D.C. No. 5:09-CV-00187-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Christopher Borneman, proceeding pro se here as in the district court, appeals the district court's grant of summary judgment to defendants Rozier and Maples on qualified immunity grounds.[1]  Mr. Borneman filed suit under 42 U.S.C. § 1983 claiming defendants, Oklahoma Highway Patrol Troopers, used excessive force in arresting him and then unduly delayed his receipt of medical care.  He requests leave to proceed on appeal in forma pauperis (IFP).  That request is granted.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm on the merits.

### *Background*

The undisputed facts established that Mr. Borneman led Oklahoma Highway Patrol troopers on a fifty-mile high speed chase on the Turner Turnpike near Oklahoma City, Oklahoma.  Defendants Trooper Rozier and Captain Maples were among the police officers attempting to apprehend Mr. Borneman and his brother, who was a passenger in the car.  The chase concluded when Mr. Borneman left the highway and turned into a parking lot, where Trooper Rozier stopped Mr. Borneman's vehicle.  Mr. Borneman asserts that even though he immediately got out of his car and surrendered by lying down on the pavement, Trooper Rozier "grabbed [his] hair and lifted [his] head and slammed

---

[1]     Mr. Borneman also named Trooper Miller as a defendant, claiming he had used excessive force against his brother, who was also in the car.  Mr. Borneman voluntarily dismissed Trooper Miller from the case after the magistrate judge explained that he could not pursue claims on behalf of another person.  *See* R. Vol. 1 at 19.

[his] face on the pavement and used his knees on [his] head to apply his weight to inflict further unnecessary and wanton pain and suffering." R. Vol. 1 at 11. He claims that Captain Maples failed to intervene to stop Trooper Rosier's use of excessive force. In addition, he alleges that although he required immediate medical care, he was required to sit in a police vehicle for 20 or 30 minutes before he was taken to a hospital. It is undisputed that he received medical treatment at the scene.

Trooper Rozier described the apprehension differently, asserting that Mr. Borneman did not obey his commands to place his hands behind his back. A struggle ensued until Trooper Rozier was able to handcuff Mr. Borneman. He denied that he, or anyone else at the scene, grabbed Mr. Borneman by the hair and slammed his head on the pavement.

The chase and apprehension were filmed by three cameras, two on the dashboards of police cars pursuing Mr. Borneman, R. Vol. 2 Exs. 2 & 4, and the third in a news helicopter that followed the chase and apprehension, *id.* Ex. 3. Mr. Borneman maintains that the videotapes substantiate his claims.

A magistrate judge issued a thorough report and recommendation concluding that defendants were entitled to qualified immunity because defendants did not violate Mr. Borneman's constitutional rights. The district court adopted the report and recommendation and granted summary judgment in favor of defendants. Mr. Borneman appeals, arguing (1) the videotapes establish

his claim of excessive force, (2) defendants unduly delayed medical care, and (3) disputed facts precluded summary judgment.

## *Analysis*

A.  Legal Standards

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted).  "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quotation and alteration omitted).

We construe liberally the pleadings filed by pro se litigants, but we do not act "as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). "We review a grant of summary judgment on the basis of qualified immunity de novo." *Harman v. Pollock*, 586 F.3d 1254, 1260 (10th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3590, 79 U.S.L.W. 3014 (U.S. Oct. 4, 2010) (No. 09-1195).  To survive summary judgment after a defendant has claimed qualified immunity, the plaintiff must demonstrate both:  "(1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Serna v. Colo. Dep't of Corr.*,

455 F.3d 1146, 1150 (10th Cir. 2006) (quotation omitted).  The Supreme Court has held that the federal district and appellate courts have discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.  *Pearson*, 129 S. Ct. at 818.

In this case, we hold that defendants did not violate Mr. Borneman's constitutional rights.  Therefore, we need not address whether those rights were clearly established.

B.  Excessive Force

A claim that law enforcement officers used excessive force in arresting a free citizen is analyzed under the Fourth Amendment's "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  Factors pertinent to the reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

Not surprisingly, Mr. Borneman's description of the pertinent events differs from the police officers' version.  Normally, at the summary judgment stage, the court "construe[s] the record in the light most favorable to the non-moving party."

*Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). But where, as here, the record contains videotapes capturing the events in question, the court "view[s] the facts in the light depicted by the videotape." *Id.* at 381.

Mr. Borneman maintains that the news video shows that "as soon as [his] vehicle comes to a stop in Chili's parking lot, the plaintiff immediately exits the vehicle with [his] hands in the air. . . . Plaintiff dropped to the ground without being forced." R. Vol. 1 at 66. He also asserts that the video later shows that Trooper Rozier "comes over and inflicts one final blow to [his] head. As [he] lay motionless and injured Trooper Rozier uses his full body weight and drops his knee on [Mr. Borneman's] head . . . ." *Id.* In addition to the news video, Mr. Borneman relies on the dashboard video from Trooper Rozier's patrol car, *id.* Vol. 2 Ex. 4, to refute the trooper's statement that he told Mr. Borneman to put his hands behind his back.

The videotapes show the following. As soon as the vehicles stopped, Trooper Rozier quickly approached the driver's side of Mr. Borneman's car, gun drawn, voicing commands to the driver. He drew Mr. Borneman out of the car and both men struggled on the pavement until a second officer assisted in subduing Mr. Borneman. The video does not show Trooper Rozier picking up Mr. Borneman's head by the hair and slamming it onto the pavement. Shortly

-6-

after Mr. Borneman was handcuffed, Trooper Rozier, who had stood up and walked a few steps away, returned to Mr. Borneman, and placed his knee on Mr. Borneman's back, not his head (apparently preparatory to raising him to a standing position, although the video camera moved away before Mr. Borneman stood up).[2]

We conclude that Trooper Rozier's actions in arresting Mr. Borneman were objectively reasonable under the circumstances. Not only does the evidence fail to support Mr. Borneman's claims that Trooper Rozier "beat a cooperative, restrained arrestee," R. Vol. 1 at 11, but Trooper Rozier's response to the situation of a fleeing suspect who had tried to elude authorities at extraordinary speeds over 50 miles of highway, endangering the officers and the public, was objectively reasonable. Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation omitted). Accordingly, the district court correctly ruled that Trooper Rozier did not violate Mr. Borneman's constitutional rights and was therefore entitled to qualified immunity.

---

[2]    Mr. Borneman asserts that a statement by Captain Maples shows that Trooper Rozier was beating him. He claims the captain said, "Alright [sic] men you can stop beating them, here comes [sic] the news cameras." Aplt. Opening Br. at 3. But even if Captain Maples made the statement, and even if the statement was not made in jest, it does not contradict the videotape evidence negating Mr. Borneman's excessive-force claim.

We turn to Mr. Borneman's claim that Captain Maples is liable because he failed to prevent Trooper Rozier from using excessive force. Although "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983," *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008), our holding that Trooper Rozier's actions did not violate Mr. Borneman's constitutional rights forecloses this claim against Captain Maples.

C. Delay of Medical Care

Mr. Borneman claims his constitutional rights were violated because medical care was delayed following his arrest. He alleged that despite his bleeding face and head, he was placed in a police vehicle for "about 20 to 30 minutes" before being taken to the hospital. R. Vol. 1 at 12. It is undisputed that he was treated by paramedics at the scene shortly after he was placed in the police vehicle.

Because Mr. Borneman was a detainee at the time, his claim arises under the due process clause of the Fourteenth Amendment, which provides "the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand Cnty.*, 119 F.3d 862, 867 (10th Cir. 1997) (quotation omitted). Therefore, we consider whether his Eighth Amendment rights were violated. "In order to state a cognizable claim, a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs. . . . Delay in medical care can only

constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation, quotations, and alteration omitted).

Claiming he was severely injured during the arrest, Mr. Borneman points to his $3808 medical bill, three missing teeth,[3] and "vertigo symptoms and a loss of sensation on [his] face." Aplt. Reply Br. at 3-4. We "look solely to the medical records that plaintiff submit[ted] in support of his claim of deliberate indifference." *Olson*, 9 F.3d at 1477. The medical records do not indicate that the few minutes' delay before he received treatment at the scene or the half-hour delay before he was transported to a hospital, resulted in substantial harm, such as "lifelong handicap, permanent loss, or considerable pain," *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Therefore, because Mr. Borneman has failed to demonstrate that defendants were deliberately indifferent to his serious medical needs that resulted in substantial harm, they were entitled to qualified immunity.

---

[3] Mr. Borneman has attempted to satisfy the substantial-harm requirement by asserting in this court that he is "still missing [his] 3 front teeth." Aplt. Reply Br. at 3. But he alleged in the district court that he lost his "'bridge' (which consists of [his] 3 front teeth glued or fused together with 2 metal posts)." R. Vol. 1 at 67. A missing or broken dental appliance ordinarily does not rise to the level of substantial harm.

D.  Disputed Facts

Finally, we address Mr. Borneman's assertion that disputed facts precluded summary judgment. As discussed above, the videotapes refute his version of his apprehension and arrest. He also challenges defendants' characterization of the high-speed chase as causing crashes and damage to other vehicles. He maintains that the only crash and vehicle damage occurred when he was apprehended, and no damage occurred during the chase. But these disputes are not *material* to the question of whether his arrest involved excessive force or whether medical care was unduly delayed. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 550 U.S. at 380 (quotation and alteration omitted). Consequently, these factual disputes do not preclude summary judgment.

## *Conclusion*

Mr. Borneman's motion to proceed IFP on appeal is GRANTED. He is reminded that he is obligated to continue making partial payments until the entire fee has been paid. The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-10-