FILED
United States Court of Appeals
Tenth Circuit

October 30, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDWARD JOHN NOSEWICZ,

      Plaintiff - Appellant,

v.

JEFFREY JANOSKO,

      Defendant - Appellee.

No. 18-1139
(D.C. No. 1: 16-CV-00447-PAB-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **MCKAY**, and **O'BRIEN,** Circuit Judges.

      While housed in the Adams County, Colorado detention facility, Edward

Nosewicz was involved in an altercation with jail officer Jeffrey Janosko. He filed a 42

U.S.C. § 1983 complaint against Janosko principally decrying excessive force. The

district judge decided Janosko was entitled to summary judgment based on qualified

---

     [*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.
     This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not encouraged, but not prohibited. Fed. R. App. 32.1. Citation is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id*.

immunity because Nosewicz failed to show the acts claimed violated clearly established law. In so concluding, he decided the altercation occurred because (as Janosko alleged) Nosewicz actively resisted Janosko's attempt to move him from his cell to a cool-down cell. However, Nosewicz never admitted to actively resisting the move but instead said Janosko's use of force was gratuitous and injurious. Because Nosewicz's version of the material facts differ dramatically and irreconcilably from Janosko's, summary judgment was inappropriate; we reverse and remand.

## I. Background

On the morning of December 5, 2014, Nosewicz was arrested by police officers from the Thornton, Colorado police department for retaliation against his neighbor, defacing property, and criminal mischief.[1] He was transported to the Adams County Detention Facility (ACDF). During the intake process, he was evaluated by two members of ACDF's medical staff. He also signed a form indicating he had no chronic medical conditions and no need for medication other than an antibiotic for a tooth infection. Nosewicz was placed in general population.

Later that same day, between 7 and 8 p.m., Nosewicz became "very irate" and complained to Janosko that he needed to see medical staff for his medications and oxygen. (Appellant's App'x at 125.) He admits he was "demanding and his voice was aggressive and angry." (*Id.*) Janosko agreed to notify the medical staff, which calmed

---

[1] It appears Nosewicz's retaliatory acts against his neighbor stem from a disagreement over a shared fence. During the arrest, officers slammed Nosewicz to the ground, injuring his face. Nosewicz does not here complain about the arrest.

Nosewicz. Soon thereafter, another officer escorted Nosewicz to the medical unit, where he was issued an oxygen concentrator. He also discussed his medications with a nurse but did not receive them because his pharmacy could not be reached for verification. Nosewicz does not complain of this incident, calling it instead "a model of constitutional conduct." (Appellant's Op. Br. at 17.)

A few hours later, at 4:10 a.m. on December 6, 2014, Nosewicz began "screaming at the top of his lungs," "When do we get the nurse again?" (Appellant's App'x at 29, 123, 126.) Janosko told him a nurse would be through the cellblock later for morning medication pass. Nosewicz claimed he could not hear Janosko and repeated that he needed a nurse. Janosko then approached Nosewicz's cell door and asked the tower guard to open it in order to better communicate with Nosewicz. After the door was opened, Janosko asked Nosewicz why he wanted to see a nurse. Nosewicz said he had not yet received his blood pressure medication and had awakened in a cold sweat. Janosko told Nosewicz he did not appear to be sweating but promised to call the medical unit. The promise contained a caveat: if medical staff would not see him, Nosewicz would have to file a medical kite. "This infuriated [Nosewicz] and he let [Janosko] know so." (*Id*. at 126.) He "became progressively angrier, was screaming at the top of his lungs, and was yelling at Janosko." (*Id*. at 30.) Janosko said "he did not appreciate the tone which [Nosewicz] was using . . . and that he was being disrespectful to him." (Appellant's App'x at 126, 192.) Due to Nosewicz's "irate behavior and refusal to obey lawful commands," Janosko decided to escort him to a cool-down cell. (*Id*. at 30, 123,

- 3 -

229 (n.4).)

The parties dispute what happened next, although both agree a scuffle occurred. For his part, Janosko claims Nosewicz refused to obey his command to exit his cell and physically resisted being taken to another cell. Therefore, he took Nosewicz to the floor with a straight-arm bar maneuver which caused a laceration to Nosewicz's left elbow. Nosewicz, on the other hand, says that after Janosko told him he was being disrespectful, Janosko "slammed [his] head into a cinderblock wall, hit him on the left side of his chest, fracturing one of his ribs, and caused his left elbow to be lacerated when he collapsed to the floor."[2] (Appellant's App'x at 237-38 (quotations marks omitted).)

A surveillance camera mounted in the cellblock captured the events, but not well. Video from the camera shows Janosko approaching Nosewicz's cell and the cell door opening. Soon thereafter, the parties somehow switched positions, with Nosewicz in the doorway and Janosko inside the cell. Eventually, a scuffle ensued between the two. Because the camera is mounted at some distance from Nosewicz's cell and does not contain audio, it fails to reveal what happened inside the cell or why. Notably, it does not reveal whether Nosewicz refused commands to exit the cell or otherwise resisted Janosko's attempt to remove him from the cell.

---

[2] Nosewicz's story changed during his deposition. He initially stated that immediately after his cell door opened, Janosko lunged at him, placed him in chokehold, and slammed his head into the cinderblock wall which rendered him unconscious. As he fell to the floor, he regained consciousness and Janosko hit him in the ribs, breaking them. Later, when confronted with the surveillance video, he reconsidered and admitted Janosko did not place him in a chokehold immediately after the cell door was opened.

Multiple officers responded to the scene. Nosewicz was moved to a cool-down cell, where, five minutes later, he was seen by a nurse. He was then escorted to the medical unit for treatment for his elbow. Medical staff later provided one of his medications. He was released on bond that same day. It is unclear from the record whether Nosewicz informed the facility's medical staff of injuries caused by the event, other than the lacerated elbow.[3] Nevertheless, he went to the local emergency room, where he was determined to have swelling on the left side of his head and a rib fracture.[4]

Nosewicz filed a § 1983 complaint against Janosko alleging (1) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment and (2) excessive force in violation of the Fourth Amendment. Janosko sought summary judgment based on qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). As a result, it was up to Nosewicz to establish (1) how Janosko's conduct violated a federal constitutional right and (2) the right was clearly established at the time of Janosko's

---

[3] In his deposition, Nosewicz made vague references to the medical unit informing him it could not "do anything with" his ribs and he "think[s]" medical staff "made note of [his head contusion]." (Appellant's App'x at 56.) But, at the same time, he testified to injuries to his wrist and back. It is unclear from his testimony when these contacts with the medical unit occurred.

[4] Janosko speculates these additional injuries resulted from the arrest, *see supra* n.1, but none were noted by ACDF's medical staff during the intake process.

conduct. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The judge decided Nosewicz (1) failed to show a constitutional violation with respect to his deliberate indifference claim and (2) failed to show the law to be clearly established with sufficient particularity as to his excessive force claim. He entered summary judgment in Janosko's favor.

## II. Discussion

A summary judgment is reviewed de novo. *Id*. at 1088. It is appropriate if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018).

"We review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Martinez*, 563 F.3d at 1088 (quotation marks omitted). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established" with sufficient particularity. *Id*.; *see also White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 552 (2017). "In determining whether the plaintiff meets this burden, we ordinarily accept the plaintiff's version of the facts—that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quotation marks omitted). However, "because at summary judgment we are beyond the pleading phase of the litigation, the plaintiff's version of the facts must

find support in the record. Thus, if the nonmoving party's version of the facts is blatantly contradicted by the record, so that no reasonable jury could believe it, then we should not adopt that version of the facts." *Id*. (citations and quotation marks omitted). If the plaintiff fails to satisfy either part of his "heavy two-part burden," a court must recognize the defendant's qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotation marks omitted). A court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first. *Pearson*, 555 U.S. at 236.

A. *Deliberate Indifference to Medical Needs—Fourteenth Amendment*

The Eighth Amendment prohibits deliberate indifference to a convicted inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This principal also applies to pretrial detainees, like Nosewicz, through the Fourteenth Amendment's Due Process Clause. *Martinez*, 563 F.3d at 1088. Deliberate indifference to serious medical needs may be "manifested . . . by prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with . . . treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Deliberate indifference has both an objective and subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Under the objective prong, the alleged deprivation must be "sufficiently serious." *Id*. (quotation marks omitted). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (quotation marks omitted). The

- 7 -

subjective prong "requires the plaintiff to present evidence of the prison official's culpable state of mind." *Id.* A prison official cannot be liable unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotation marks omitted).

The judge decided Nosewicz made "little attempt to defend his deliberate indifference claim" other than making a conclusory reference to Janosko's "failure to call medical" during the December 6 incident. (Appellant's App'x at 234 (quotation marks omitted).) But "[Janosko]'s failure to contact medical before entering [Nosewicz]'s cell," the judge concluded, was not enough to support his claim. Nosewicz had to "show that [Janosko] prevented him from receiving treatment or denied him access to medical personnel capable of evaluating the need for treatment." (*Id.* (quotations marks omitted).) Nosewicz's naked claim failed because he admitted Janosko offered to call medical staff on his behalf and he was seen by a nurse shortly thereafter.[5]

Nosewicz tells us that seeing a nurse shortly after his encounter with Janosko does not mean Janosko did not violate his Fourteenth Amendment right to adequate medical care. That is because the only reason he was promptly seen by a nurse was due to Janosko's use of excessive force. According to him, under the judge's reasoning, he "should thank [Janosko] for injuring him so that he would be promptly brought to the

---

[5] As a result, the judge did not need to decide whether Janosko acted with a sufficiently culpable state of mind.

attention of the medical staff." (Appellant's Op. Br. at 19.) Yet, he continues, it was Janosko's use of excessive force in response to his request for medical care which violated his Fourteenth Amendment rights. He claims: "[A] jail guard's deliberate and unjustified use of excessive force against an inmate who has medical needs is the epitome of indifference to such needs." (*Id*. at 19-20.)

To the extent these arguments may present a viable theory of liability, Nosewicz did not raise them in the district court. As a result, our review is for plain error. *See United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012) (arguments not raised in the district court are reviewed for plain error); *United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017) ("[O]ur general rule against considering new arguments on appeal applies equally when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial." (quotation marks omitted)). Under plain error review, Nosewicz must show (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).

He does not request plain error review on appeal, either in his opening brief or in his reply brief, even though Janosko's answer brief claimed the new theory was subject to plain error review.[6] This "'surely marks the end of the road for an argument for reversal

---

[6] Nosewicz's reply brief provides <u>no argument</u> concerning his Fourteenth Amendment deliberate indifference claim.

not first presented to the district court.'" *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011)); *see also United States v. Courtney*, 816 F.3d 681, 683-84 (10th Cir. 2016) (reviewing argument for plain error in criminal appeal where appellant "argued plain error fully in his reply brief"); *United States v. MacKay*, 715 F.3d 807, 831–32 & n.17 (10th Cir. 2013) (suggesting, but not deciding, that we may consider a plain error argument made for the first time in a reply brief).

Proper procedures aside, Nosewicz cannot establish plain error. "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *See United States v. Wolfname*, 835 F.3d 1214, 1221 (10th Cir. 2016) (citations and quotation marks omitted). Although we have cases addressing an inmate's claim that he was denied medical care or such care was delayed following a prison guard's use of excessive force against him (which is the theory Nosewicz presented below), *see, e.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 431-32 (10th Cir. 2014), *Borneman v. Rozier*, 398 F. App'x 415, 418-20 (10th Cir. 2010) (unpublished), Nosewicz cites no cases, and we have uncovered none, in which a prison guard's alleged excessive force in response to an inmate's need for medical care can form the basis for an Eighth or Fourteenth Amendment lack of medical care claim. That is not surprising. If he was denied medical care, he has a valid claim. If his medical care claim was met with excessive force, he has another. But his attempt to piggyback his denial of medical care

claim on an excessive force claim, in other words to claim two separate constitutional violations based on the same act (excessive force), is inappropriate.

Summary judgment in favor of Janosko on the Fourteenth Amendment claim was proper.

B. *Excessive Force – Fourth Amendment*

Nosewicz was arrested and detained without a warrant prior to any probable cause hearing. As a result, the judge correctly applied the excessive force analysis of the Fourth Amendment. *Estate of Booker*, 745 F.3d at 419. Under that analysis, the relevant inquiry is whether Janosko's actions were "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotations marks omitted). While "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* at 396 (citation and quotation marks omitted). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The judge did not decide whether Janosko's actions were objectively reasonable (i.e., whether a constitutional violation occurred). Rather, he concluded Janosko was entitled to qualified immunity because Nosewicz had failed to show how Janosko's conduct violated a clearly established constitutional right.

"A clearly established right is one that is sufficiently clear that every reasonable

official would have understood that what he is doing violates that right." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) (quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation marks omitted). Although we do not require "a case exactly on point," *see Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

The Supreme Court recently reiterated that "clearly established law should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quotation marks omitted). Rather, "the clearly established law must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (citation and quotation marks omitted). In other words, Nosewicz had to "identify a case where an officer acting under similar circumstances as [Janosko] was held to have violated the Fourth Amendment." *Id.*

In the district court, Nosewicz cited three cases, contending they clearly established Janosko's conduct to violate the Fourth Amendment: *Estate of Booker*, 745 F.3d 405, *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). The judge concluded none demonstrated the constitutional right

- 12 -

to be clearly established at the time of the event. Since the parties disputed the nature of their altercation, he assumed Nosewicz's version was correct: Janosko "slammed [his] head into a cinderblock wall, hit him on the left side of his chest, fracturing one of his ribs, and caused his left elbow to be lacerated when he collapsed to the floor." (Appellant's App'x at 237-38 (quotation marks omitted).) Nevertheless, he concluded all three cases involved a handcuffed or otherwise non-resisting inmate/plaintiff. *See Kingsley*, 135 S. Ct. at 2470 (handcuffed plaintiff); *Estate of Booker*, 745 F.3d at 413-15 (non-resistant and motionless plaintiff); *Morris,* 672 F.3d at 1196 (non-resistant plaintiff). Nosewicz was neither incapacitated nor non-resisting. His disturbing behavior was a threat to Janosko's safety and he "was actively resisting by refusing to obey [Janosko]'s lawful commands."[7] (Appellant's App'x at 240.)

Because Nosewicz failed to identify a case on point, the judge turned to the "sliding scale" approach we adopted in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004). *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Under that approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce*, 359 F.3d at 1298. Applying the *Graham* factors, the

---

[7] The judge also noted that *Estate of Booker* involved a different type and degree of force: neck hold designed to cause unconsciousness, pain compliance hold to right arm, pain compliance device to left ankle, over 100 pounds of pressure to back, and longer-than-recommended Taser shock. Moreover, although the judge did not mention it, *Kingsley* is "of no use in the clearly established inquiry" because it was decided in June 2015, after the incident in question (December 6, 2014). *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004).

judge decided Janosko's conduct was not "obviously egregious":

> [T]he three *Graham* factors do not point strongly to a conclusion that defendant's Fourth Amendment rights were violated. While plaintiff's conduct was not a "severe" crime, it did "pose an immediate threat to the safety" of [Janosko] and the others in the cellblock. *Graham*, 490 U.S. at 396. [Janosko] offered to help [Nosewicz] seek medical care and sought to move [him] to a different cell for safety reasons. DSUMF 16; PSUMF 16. But [Nosewicz] "actively resisted" [Janosko's] attempt to move [him] to a different cell. *Graham*, 490 U.S. at 396. As [Nosewicz] admits, [Janosko] was authorized to use compliance holds to move a resistant or disruptive prisoner. DSUMF 30 ("If an inmate is engaging in passive or aggressive resistance, such as [plaintifff's] failure to follow lawful commands, a deputy may use a series of 'control and compliance holds,' which involve physical contact, but are designed to gain control of the inmate and/or escort him to another location." (citations omitted))). While grappling with [Nosewicz] alone in a prison cell, [Janosko] struck [Nosewicz] and threw [him] to the ground, at which time [he] hit his head on the cell wall and cut his elbow. PUSMF 19, 20. Such actions are not "obviously egregious conduct in light of prevailing constitutional principles," which allow for objectively reasonable use of force to ensure safety. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Therefore, the Court finds that plaintiff has not met his burden to show that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84 (internal quotation marks omitted).

(Appellant's App'x at 240-41.)[8]

As the judge's analysis makes abundantly clear, two facts predominantly informed the clearly established analysis—(1) Nosewicz was a safety risk and (2) he "actively resisted." Nosewicz says the analysis was flawed because both facts are disputed. We

---

[8] We have called the sliding-scale approach into doubt. *See Lowe v. Raemisch*, 864 F.3d 1205, 1211 n.10 (10th Cir. 2017) ("[B]ecause the sliding-scale approach may allow us to find a clearly established right even when a precedent is neither on point nor obviously applicable," it "may arguably conflict with recent Supreme Court precedent on qualified immunity[.]"). However, we assume, without deciding, it applies here because neither party has argued otherwise. Moreover, even if it should not apply, reversal is still warranted because the judge's analysis of the cited cases turned in large part on Nosewicz's "active[] resist[ance]," which is disputed.

- 14 -

see it differently as to the former, but agree as to the latter.

Nosewicz admitted "he became progressively angrier, was screaming at the time of his lungs, and was yelling at Janosko" during the December 6 incident. (Appellant's App'x at 30, 123.). Yet, he claims that without knowing what was said, these facts alone do not show he posed an immediate threat to the safety of Janosko and the others in the cellblock. Nosewicz ignores the surveillance video. Although the judge did not specifically mention it in his clearly established analysis, he did find the video to show "that, after [Janosko] entered the cell, the parties switched positions such that [Nosewicz] was in the doorway with [Janosko] inside the cell." (*Id*. at 238 n.6.) Our own review of the video supports this finding. *Cf. Scott v. Harris*, 550 U.S. 372, 378-79 (2007) (rejecting the plaintiff's version of car chase where contradicted by the videotape capturing the events). Nosewicz's undeniably hostile demeanor and the parties' switch of positions in the cell constituted an immediate threat to Janosko's safety—he was inside the cell with an angry and disruptive inmate blocking the only exit. Not only that, with the cell door open, Nosewicz had easy access to the rest of the cellblock, where he could potentially harm others or generally wreak havoc.

As to whether he "actively resisted," Nosewicz admitted: "Because of [Nosewicz's] irate behavior and refusal to obey lawful commands, Janosko needed to escort [him] from his cell to another, safer location." (Appellant's App'x at 30.) He claims, however, his anger and refusal to obey lawful commands, which required his move to another cell, does not demonstrate "active[] resist[ance]." He is correct.

- 15 -

The judge did not explain how Janosko "actively resisted." Initially, he said Nosewicz "was actively resisting by refusing to obey [Janosko's] lawful commands" yet did not identify the lawful commands refused[9] or the level of resistance. (Appellant's App'x at 240.) Later, he stated Nosewicz "actively resisted [Janosko's] attempt to move [him] to a different cell." (*Id.*) But again, he did not define "active[] resist[ance]." Instead, he simply cited Nosewicz's admission to being irate and refusing to obey lawful commands. But nowhere in that admission does it identify the lawful commands refused or say Nosewicz actively resisted the move to another cell, let alone what that active resistance entailed, i.e., whether he physically resisted or merely refused to leave. It says only that his anger and refusal to obey lawful commands, whatever they were, prompted the need to move him to a different cell. Unfortunately, the video does not fill in the blanks.

Although not clear, it appears the judge may have equated a mere refusal to leave the cell as "active[] resist[ance]." If Nosewicz refused to obey a command to leave the cell, such refusal would have justified Janosko's use of physical force to effectuate his removal from the cell. But, it would not have justified banging Nosewicz's head into the wall and hitting him with enough force to break his ribs. On the other hand, if Nosewicz physically resisted the attempt to move him, Janosko could have increased the level of force necessary to gain compliance, but no more. *See Hinton v. City of Elwood, Kan.*,

---

[9] They might have been "you have to leave the cell with me" or merely "shut up" or "calm down." The record is not specific.

997 F.2d 774, 780-81 (10th Cir. 1993) (officer physically grabbing plaintiff to keep plaintiff from leaving was reasonable; later use of stun gun on plaintiff was also reasonable where plaintiff resisted officers' attempts to handcuff him by kicking his feet, flailing his arms, and biting the officers); *see also Story v. Norwood*, 659 F.3d 680, 686-87 (8th Cir. 2011) (reasonable for jail administrator to push inmate twice toward wall and to threaten to use a Taser where inmate refused command to stand against wall). If Nosewicz's injuries resulted from the mutual escalation of violence, Janosko would enjoy qualified immunity so long as his part in the fracas was reasonable.

According to Janosko, that is exactly what occurred. In his incident report, he states that due to the disturbance Nosewicz was causing by screaming and cursing at him, he ordered him to exit his cell. When Nosewicz refused to do so, he entered the cell and grabbed him by the arm to escort him out. In response, Nosewicz pulled his arm away. Janosko told him to stop resisting and place his hands behind his back. When Nosewicz refused those commands and continued to try to pull his arm away, Janosko placed him to the floor to gain control over him, where Nosewicz continued to struggle and resist. Apparently, the judge accepted Janosko's version of the events.

But Nosewicz never admitted to Janosko's version of the facts.[10] Instead he

---

[10] Janosko's report was cited as support for the undisputed fact that "[b]ecause of [Nosewicz's] irate behavior and refusal to obey lawful commands, Janosko needed to escort [him] from his cell to another, safer location." (Appellant's App'x at 30.) However, by admitting to this undisputed fact, Nosewicz admitted only to its statement of fact, not the incident report. To the extent the report is relevant, it is relevant only as to that in the report which supports the undisputed fact. The report shows Nosewicz was

(Continued . . .)

offered a different story:  After Janosko told him he was being disrespectful, Janosko attacked him without provocation.  In other words, according to Nosewicz, Janosko's use of force was gratuitous.  Because Nosewicz's version is not "blatantly contradicted by the record," the judge was required to accept it at this stage of the proceedings.  *Halley*, 902 F.3d at 1144 (quotation marks omitted).  If we accept Nosewicz's version of the events (as we must at this juncture), Janosko is not entitled to qualified immunity.  Although Nosewicz's admittedly irate and disruptive behavior may have posed a potential threat to Janosko and others, such behavior would not, on its own, justify slamming Nosewicz's head into the wall and hitting him in the chest with enough force to break his ribs.  *See Morris*, 672 F.3d at 1195-96 (officer's forceful takedown unreasonable where Morris, a misdemeanant, posed no threat and did not resist or flee); *see also Casey*, 509 F.3d at 1285 ("*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."); *Dixon v. Richer*, 922 F.2d 1456, 1458, 1463 (10th Cir. 1991) (officer's kicking, hitting with a flashlight, choking, and beating an already frisked plaintiff who had his hands up against his car and was not making any aggressive moves or threats was not objectively reasonable under the Fourth Amendment).

What we have, on the record before us, is a question of material fact as to the

---

"irate" but is silent as to any specific commands Nosewicz refused to obey which triggered the need to move him from the cell.  It indicates only that Nosewicz's behavior (anger, screaming, disrespect, cursing) caused a disturbance and that disturbance prompted the need to remove him from the cell.

reasonableness of Janosko's conduct.  Summary judgment was not appropriate.

### III. Conclusion

We **AFFIRM** the summary judgment entered in favor of Janosko on Nosewicz's Fourteenth Amendment deliberate indifference claim.  We **REVERSE** the summary judgment entered in favor of Janosko on Nosewicz's Fourth Amendment excessive force claim and **REMAND** for further proceedings consistent with this decision.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge